In the Matter of the Estate of Thomas E. Crimmins, Deceased.

Surrogate's Court, New York County, May 6, 1936.

*Thomas Crimmins Burke,* for the trustees.

*Ellen J. Burke,* general guardian, in person.

*Murray MacElhinny,* special guardian for infants.

DELEHANTY, S. In this accounting proceeding the special guardian for infant remaindermen filed objections which require application of the principles announced by the Court of Appeals in *Matter of Chapal* (269 N.Y. 464). In the account the original schedules show that the income on all foreclosed properties was combined and show a payment over to the beneficiary of income of the surplus income derived from all operations. The revised schedules which were ordered filed so as to catalog separately each separate foreclosed property show that in the case of every foreclosed property principal funds in substantial sums which were used to salvage the original mortgage investment have not yet been repaid to principal. It follows that under the direction of *Matter of Chapal (supra)* no net income derived from the operation of any property taken over by reason of foreclosure can be applied to the use of the beneficiary of income unless principal has first been reimbursed for all such advances. Until the respective balances of principal so used have been refunded the surplus rents received in each case must be applied first to reimburse principal. Only if a surplus of net income still remains after all principal advances to salvage a particular investment have been repaid may the trustees exercise any discretion in favor of the income beneficiary. Even when the principal advances are fully repaid there still remains a discretion to be exercised by the trustees whether surplus income in their hands from any property will be paid over to the beneficiary of income or be reserved for possible further needs of the respective property.

The fact that in the accounting for the period antedating December 31, 1934, the schedules showed the same unrefunded advances from principal and showed a payment over to the life tenant of income from the foreclosed properties does not support the idea advanced in behalf of the life tenant that a rule of distribution had been established by the former decree. That decree merely settled the accounts as they were then presented. The question is still open as to any income received after December 31, 1934, and as to such income the rule has been made for this court by *Matter of Chapal (supra)*. In its opinion the Court of Appeals set out (p. 470) the instructions given by the surrogate. Among these was the instruction that if a surplus of rental income existed in the case of any parcel the trustees were first to use that surplus to reimburse principal. The affirmance by the Court of Appeals of the decree of the surrogate necessarily carries with it adoption of these instructions of the surrogate.

The schedules relating to foreclosed properties are to be further revised so as to show the original investment, all advances from principal to salvage the original investment, the operating results for the period accounted for, the application of any net income against principal advances, the operating loss, if any, increasing the unrefunded principal advances and, finally, the total principal invested in the foreclosed property. While the original mortgage investment should be shown for information its amount should not be taken into the computation. The balance which the revised schedules should show is the balance of unrefunded additional advances disregarding the original investment. In future accountings this unrefunded principal advance will be shown together with the operating statement of the property for the periods accounted for in the future and thus there will be a continuing account which will show whether the additional advances have been repaid when the property is liquidated. When the new schedules have been filed in conformity with these directions the decree settling the account will be based thereon.

The account presents the question of the trustees' power in relation to property taken over in foreclosure of a mortgage. Here the trustees took over in foreclosure a one-story building and found themselves confronted with the necessity of protecting a building already substantially injured by vandalism. They were confronted with the need to invest substantial additional principal sums to rehabilitate the building or to find a purchaser who was willing to take it in its then condition. They pursued the latter course and the purchaser gave back a purchase-money mortgage for the entire purchase price and after taking possession rehabilitated the building and put it into good order and condition. It is now operating satisfactorily and the trustees are obtaining income on the purchase-money mortgage. The purchase-money mortgage no doubt exceeds the limit permissible to these trustees if they were making a new mortgage loan on the same property. The special guardian objects to the transaction on that ground. There is presented, therefore, the question whether the limits upon trustees in respect of new mortgage investments are applicable to the acts of trustees in disposing of property which they are forced to take over in the effort to protect an original mortgage investment lawfully made.

The court holds that the special guardian's objection is unsound and that the restrictive rule respecting original investments is not applicable to this type of transaction. Here the trustees were dealing with a salvage operation. The operation was not complete until the original capital had been recouped as far as was possible. The trustees had on their hands a piece of real property. They were

charged with the obligation of diligence, honesty and fidelity in disposing of it on the best terms which seemed at the time to be available. They were necessarily clothed with a business discretion as to the manner in which they would further carry their salvage operation. The foreclosure of the land so as to get possession of it was only part of the salvage operation. So, too, the putting in of new capital was part of the salvage operation. So, too, was the decision to operate or not to operate the property while awaiting a purchaser. So, too, must necessarily be the determination when and on what terms to sell. No question could be made of illegality in taking title to the property. The taking back of a purchase-money mortgage is in effect a continued reservation of the title to the extent necessary to collect the balance of the purchase price. (*Boies* v. *Benham*, 127 N. Y. 620, 624; *Dusenbury* v. *Hulbert*, 59 id. 541.) Prudent and honest decisions suffice to protect trustees against surcharge in making sales of foreclosed properties. Since the court is of opinion that the action of the trustees in making this sale is eminently proper, the objection of the special guardian to the terms thereof is overruled.

The special guardian also objects to the failure to set up a depreciation reserve to cover obsolescence or diminution in value of buildings and equipment. The trustees have in fact charged to principal the entire cost of new equipment purchased in the process of rehabilitating properties taken over in foreclosure. As a consequence this entire expenditure will be refunded to principal out of the proceeds of liquidation and the remaindermen will not suffer. Nothing in this will indicates any intention by the testator that the life tenant should be compelled to give up some of the operating net income so as to furnish a reserve for obsolescence on buildings. On the contrary, the will shows the testator's intention to first care for the income beneficiary. Accordingly the reserve out of income is held to be unnecessary and the objection of the special guardian in respect of a reserve is overruled.

Submit revised schedules conforming to the directions contained herein. With them may be submitted, on notice, a decree settling the account in conformity with the rulings here made.