## Nirdlinger's Estate (No. 2).

Argued May 18, 1937. Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Frank A. Bedford, Jr.,* for appellant.

*Joseph M. Leib,* with him *John J. McDevitt, 3rd,* and
*John J. McDevitt, Jr.,* for appellees.

*Ella Graubart,* with her *Charles F. C. Arensberg,* of
*Patterson, Crawford, Arensberg & Dunn,* and *Julian
Miller,* for amicus curiæ.

OPINION BY MR. JUSTICE SCHAFFER, July 7, 1937:

For the first time there arises before this court the
question of the apportionment between life tenant and
remainderman of the proceeds of a mortgage invest-
ment, where a trustee has had to foreclose the mortgage,
buy the property covered at the foreclosure sale, hold it
for a time and then sell it at a loss. The question has

arisen in several other jurisdictions.[1]  Most of them are in agreement that apportionment should be made: 2 Perry on Trusts (7th Ed.), Sec. 548c; 4 Bogert on Trusts and Trustees, Sec. 820.  They differ as to method and formula only: 4 Bogert on Trusts and Trustees, supra.[2]

Samuel F. Nirdlinger by his will created a trust of his residuary estate.  He provided that the income therefrom should be paid in fractional shares to designated persons or classes of persons and after the termination of all the life estates the principal is to be paid to the child or children of grandchildren or in the event of the grandchildren dying without issue to be paid to those who would be entitled under the intestate laws.

In the course of the administration of the trust it became necessary to foreclose many mortgages held by the trustees and of the properties thus acquired forty-two have been sold, all at figures less than the amounts of the mortgages.  At the audit of the account the life tenants contended that part of the proceeds of these sales, carried in the account as principal, should be awarded to them in recoupment of their loss of income caused by the defaults under the mortgages, and lasting in practically every instance until the sale took place.  The orphans' court concluded, as we do, that apportionment should be made in all such cases.  The foundational reason for this conclusion is that in nearly all instances of long continuing trusts, the life tenants are the primary objects of the bounty of testators, and their incomes should be preserved to them, as far as it is possible to do so, even though it may result in ultimate diminishment

---

[1] *Equitable Trust Co. v. Swoboda,* 113 N. J. Eq. 399, 167 A. 525; *In re Chapal's Will,* 269 N. Y. 464, 199 N. E. 762; *Wallace v. Wallace,* 90 S. C. 61, 72 S. E. 553; *Re Southwell* (1915), 85 L. J. Ch. N. S. 70; *Re Horn* (1924), 2 Ch. 222; *Stewart v. Kingsale* (1902), 1 Ir. R. 496; *Re Plumb* (1896), 27 Ont. Rep. 601.  See also *Greene v. Greene,* 19 R. I. 619, 35 A. 1042.

[2] See also Bailey and Rice, "Defaulted Mortgage Investments," 84 U. of Pa. L. Rev. 157.

of principal to be paid to far off remaindermen. Life tenants should not be required to starve in order that remaindermen may ultimately feast.

The auditing judge decided that apportionment should be made in the following manner: "First, ascertain the total amount of principal expended on the property foreclosed, including the original amount of the mortgage, the expenses of foreclosure, amounts paid for carrying charges during the period of ownership of the property by the trustees, the delinquent taxes at the time of foreclosure, and the taxes accrued during the period of ownership by the trustees less any amount of rent received; second, ascertain the amount of income loss to the life tenants, including the interest due and in default at the time of the sheriff's sale and the income withheld from the life tenants, consisting of interest at the rate fixed by the mortgage on the principal invested in the property during the period of ownership by the trustees; third, ascertain the amount to be apportioned, which consists of the proceeds of the sale of the property less expenses incidental thereto, such as broker's commission, counsel fee, etc. The total amount of principal and income found first and second as above represents the investment in the property by the estate, and that total figure is to be used as a basis of making the apportionment to income." The auditing judge went on to observe that the "apportionment of income is purely mathematical and, of course, is the proportion which the total income loss bears to the total of both principal and income investment. In other words, the total income loss (found second as above) used as a numerator, and the total principal and income investment (found first and second as above) used as denominator, gives the fraction, which, multiplied by the proceeds of sale of the property (found third as above), gives the amount to be apportioned to income."

On exceptions filed to the adjudication, the court in banc decided that, "The formula of the auditing judge

is correct except that the statement of the second factor should be modified by allowing interest on the mortgage after the foreclosure and on advances by principal at the current rate for trust investments, in this case four per cent, instead of the rate stipulated in the mortgage." From the decree of distribution entered following this opinion, the guardian ad litem for an interested minor and trustee ad litem for unborn remaindermen appeals.

We have been furnished with elaborate briefs and able oral arguments, presenting the different methods of apportionment, including that of an intervenor in support of the method approved by the American Law Institute, Restatement of the Law, Trusts, Sec. 241, which has greatly aided our determination. Our conclusion is that the rule of the Institute should prevail. To our minds it is the most equitable one as between life tenants and remaindermen. In the allowance of interest at current rate from the time of default until the time of sale, it recognizes the real situation—what rate of interest the trustee could obtain on the investment if the capital sum was actually in hand. The rule of the Institute is as follows: "The net proceeds received from the sale of the property are apportioned by ascertaining the sum which with interest thereon at the current rate of return on trust investments from the day when the duty to sell arose to the day of the sale would equal the net proceeds; and the sum so ascertained is to be treated as principal, and the residue of the net proceeds as income. The net proceeds are determined by adding to the net sale price the net income received or deducting therefrom the net loss incurred in carrying the property prior to the sale." The application of the rule will be seen in the comments and illustrations set forth.

As stated in the intervenor's brief as to foreclosure costs and carrying charges, the Restatement rule is sound in that it treats as advances money necessarily used from whatever source in acquiring the property and in holding it, and returns the money in full when

the purpose of the advances has been achieved and the property sold. Obviously, where the money is borrowed from an outside source and not taken from principal for temporary use, it will be necessary to repay the money so borrowed. This same result should follow when principal is called upon to advance the fund.[3] It is true that when these funds are taken from principal the life tenants are deprived of income which they would receive if the funds were invested. This difficulty can be equitably adjusted by allowing the life tenants interest on the money advanced.

In the present case the properties were not all sold for cash. In certain instances the trustees to dispose of the properties were compelled to take back purchase money mortgages. The court below held that the cash received should be allotted to income. If insufficient to cover the sum to which income is entitled, the balance can be paid when other principal for investment is secured, which principal can then be invested in the purchase money mortgages. This is the correct result. The life tenants are ordinarily entitled to receive their share in cash. The remaindermen's share will have to be reinvested and the purchase money mortgage may be considered as such reinvestment.

The court below is directed to modify its decree in accord with this opinion. Costs to be paid out of the estate.

---

[3] The cases which have adopted the Restatement rule with respect to distribution of foreclosure costs and carrying charges before the apportionment are: *In re Chapal's Will,* 269 N. Y. 464, 199 N. E. 762 (1936); *In re Pelcyger's Est.,* 157 Misc. 913, 285 N. Y. S. 723 (1936); *In re Otis's Est.,* 158 Misc. 808, 287 N. Y. S. 758 (1936); *In re Crimmins's Est.,* 159 Misc. 499, 288 N. Y. S. 552 (1936); *Trenton Trust Co. v. Donnelly,* 65 N. J. E. 119, 55 A. 92 (1903); *Equitable Trust Co. v. Swoboda,* 113 N. J. E. 399, 167 A. 525 (1932). See also *Edwards v. Edwards,* 183 Mass. 581, 67 N. E. 658 (1903); *In re Rowland's Est.,* 273 N. Y. 100, 6 N. E. (2d) 393 (1937).