## Stern's Estate

P. V. Gifford, for accountant.
Enoch C. Filer, for exceptant.

WAITE, P. J., December 16, 1937.—Joseph A. Stern, a resident of the City of Erie, died on October 8, 1930, leaving a last will and testament dated November 7, 1929, under item 6 of which he directed the executor to set aside $20,000, and pay the income semi-annually to his brother, William J. Stern, during his lifetime, and at the brother's death the said sum of $20,000 to revert to his estate and be disposed of to certain charities as therein directed. The First National Bank of Erie, Pa., was named trustee of the said fund. The matter is now before the court on exceptions filed by the life tenant to the said second partial account of the First National Bank, trustee. All the exceptions have been withdrawn except the fifth, relating to the payment and charge of the four mills personal property tax for county purposes, and the one mill personal property tax for State purposes, by the trustee against the income payable to the said William J. Stern, life tenant; the fifth exception being as follows:

"Fifth. Exception is taken to the disbursement from income designated as follows:

(a) June 11, 1936, C. F. Haggerty, Coll.—
1936 Personal P. 4 Mill Tax.......... $35.91
(b) Commonwealth of Pa.,—
1936 Personal P. 1 Mill Tax.......... 9.45
(c) Feb. 13, 1937 Commonwealth of Pa.—
1937 Personal P. 4 Mill Tax.......... 41.40

for the reason that the tax is unreasonable, exorbitant and overpaid and is improperly charged to the life tenant."

If the taxes above referred to are "unreasonable and exorbitant", that is a matter for the legislature and not for the court. We will confine our discussion as to whether said taxes are "overpaid and improperly charged to the life tenant."

It is conceded that the life tenant should pay this tax upon the value of his life estate, but it is urged that the present value of the life estate should be determined by

taking into consideration the age of the life tenant and the four mills tax assessed only upon that valuation, in analogy with the apportionment of inheritance taxes and insurance premiums upon real estate held for the benefit of life tenants and remaindermen. See Farber's Estate, 70 Pa. Superior Ct. 81. With this we cannot agree. If this trust estate were invested in real estate all taxes, including county, school, and road taxes assessed upon the property, would be payable by the life tenant. See Mc-Dannel et al. v. Weddige, 79 Pa. Superior Ct. 494. The four mills county tax, the one mill State tax, and the taxes upon real estate are all assessed upon principal and not upon income, and all are payable annually. So far as their payment by a life tenant is concerned, we can see no distinction between them. The remainderman in either case derives no present benefit either from such real or personal property and is only interested in the preservation of the remainder. When the remainderman comes into possession he will then become liable for whatever taxes may be lawfully imposed thereon. The fact that in the instant case the remaindermen are charities, not subject to the payment of the four mills tax and the one mill tax, is in our opinion wholly immaterial. Buhl's Estate, 300 Pa. 29, cited and relied upon by exceptant, is distinguishable in that there the property was held for charitable purposes alone and not for a life tenant with remainder to charities as in the instant case. In that case the court says (p. 35):

"It is clear, therefore, that it is a matter of indifference by whom the securities in the present estate were held. As, under the facts above stated, they were devoted to public charity, no matter in whose custody they were temporarily, they were not for the benefit of the trustees themselves or for any other person, but were devoted to particular charitable purposes, are not within the purview of the statute, and the taxes on them were improperly paid."

In the instant case the "securities" are held for the benefit of an "other person," namely, William J. Stern, the life tenant, and therefore, impliedly, from the language of the above-quoted opinion, are subject to the payment of the four mills and one mill taxes, and are payable out of the income from said securities during the lifetime of the said life tenant.

In Brown's Estate, 208 Pa. 161, the single question before the court was whether certain collateral inheritance taxes, transfer taxes, and war taxes were payable out of income or principal. Under the terms of the will these taxes were held payable out of income.

The payment of the four mills tax out of the life tenant's income appears to have been the custom in trust estates since the tax was first imposed, now many years ago. Counsel have not cited nor have we been able to find any authority directly raising or deciding the particular question involved in the fifth exception above quoted. Of course it does not necessarily follow, simply because such taxes have always been paid without question, that such payments are lawful. But because the length of time this practice has continued as a custom raises a strong presumption that it is lawful, and because of the confusion that would arise and the revolutionary changes that would be made in the management of all trust estates throughout the Commonwealth, the change here urged relative to the payment of the tax should not, in our opinion, be sustained in the absence of an imperative reason or a controlling authority.

There is in our opinion another sufficient reason why this exception must be dismissed, at least so far as charging any part of these taxes to the remaindermen is concerned, namely, that it is contrary to the intention of testator as expressed by the words of his will, and such intention is always controlling. See Reck's Appeal, 78 Pa. 432. In Brown's Estate, supra, at pages 163-164, it is said:

"We think, however, that the argument of the learned counsel does not present sufficient reasons to warrant the court in disregarding what seems to be the clear intention of the testator as ascertained from the language of his will. If the decree of the court below, from which this appeal was taken, produces the inequality suggested in the argument, it is the fault of the testator and not of the court. His will must control the distribution of the estate, and when his language is clear and explicit, his intention thus plainly expressed must be obeyed regardless of any apparent or real inequalities produced among the legatees."

The sixth clause of the will making this bequest to William J. Stern is as follows:

"Sixth. I direct my executor to set aside the sum of Twenty Thousand ($20,000.00) Dollars to invest in legal securities, the income of which is to be paid semi-annually to my brother, William J. Stern, during his lifetime and, at his death, this sum of $20,000.00 shall revert to my estate."

This clause gives the income from said principal sum of $20,000 to William J. Stern for life. True, it does not use the words "net" income, but it does say that "at his death, this sum of $20,000 shall revert to my estate," thereby directing that the whole of said principal sum shall be kept intact to the time of its reversion to the estate, which could not be done if any part of the four mills tax were paid out of the principal of said trust estate.

In Nirdlinger's Estate (No. 2), 327 Pa. 171, where certain mortgages were foreclosed for the benefit of both the life tenant and the remaindermen, it was held that certain portions of the costs and expenses incident thereto should in fairness to the life tenant be charged against both the life tenant and the remaindermen. The facts and circumstances in that case are not analogous to those upon which the exception which we are now considering is based, and it is therefore not controlling here.

For the reasons above stated the fifth exception is dismissed. The other exceptions having been withdrawn, the account is confirmed, and distribution is directed to be made in accordance herewith.