## Nirdlinger's Estate

38

*Joseph M. Leib* and *John J. McDevitt, Jr.,* for exceptants.

*Frank A. Bedford, Jr.,* contra.

KLEIN, J., April 29, 1938.—The majority of this court are of the opinion that the learned hearing judge has properly solved this difficult problem. We concur in his conclusions for the reasons stated in his opinion; Van Dusen, P. J., dissenting.

The exceptions are therefore dismissed.

VAN DUSEN, P. J., dissenting.—Following the decision of the Supreme Court in this case (Nirdlinger's Estate (No. 2), 327 Pa. 171), a schedule of distribution has been approved by the auditing judge, which raises questions which were not then before the court because the facts were not brought out. This schedule deals only with the figures in the account as filed and apportions the pro-

ceeds of the various completed salvage operations on the principles declared by the Supreme Court. After taking rents out of income account and putting it in the share due income from the salvage operations, it is said that income is $2607.40 less than appeared on the face of the account. This sum is therefore credited to income and debited to principal.

The life tenants object to this, saying that they should receive the net current rents of real estate pending the salvage operations as a minimum, and that each property should be treated as a separate unit. The auditing judge so far agreed with them as to hold that the trustee, during the salvage operation, should pay to the life tenants the net current rents. But he also held that if on the completion of the salvage operation and the filing of an account it appeared that the life tenants had in this way got more than would be allowed them by the method of apportionment, the excess payments should be refunded by the life tenants by appropriating for that purpose other income which happened to be in the hands of the trustees and available for distribution at that time. From this statement it will be seen that the opinion of the auditing judge that the trustee might pay net current rents to the life tenants is not reflected in any money result in the award to the life tenants, for they are compelled to refund. The life tenants not only want these rents but want to keep them.

I agree that the trustee should pay to the life tenants the net current rents, if any, during the salvage operation, though I cannot justify this practice in any way which is-consistent with the general theory of the salvage of foreclosed properties. The necessities of the life tenant and his position as the testator's favorite require that something should be done for him. But having so concluded, I think that it should be done in a way that will do the life tenant the most good; and I think that to compel a refund out of other income will result in taking away

the benefit. Both life tenants and trustee are entitled to a certain rule.

If the life tenant must refund out of money which happens to be in the hands of the trustee undistributed at the time the account is filed, then the overpayment ought to be recoverable from him by action as soon as the salvage operation shows that there has been an overpayment, i. e., he ought to refund out of any other money he may have. One of the reasons given for refusing to allow the recovery of voluntary overpayments is that the recipient may have altered his style of living or incurred obligations on the strength of the payment: De La Cuesta v. Insurance Company of North America, 136 Pa. 62, 136 Pa. 658. The same reason applies here. The payment does little good to the life tenant if he has to keep an undefined amount of it on hand ready to refund. Moreover, if he is also entitled to the other income of the trust he is entitled to it as and when it is available for distribution. Has he not a right to complain against the trustee who improperly withheld his income in order that there might be something at hand on which to recoup the overpayment? On the other hand, have not the remaindermen a right to complain if the trustee does not keep the other income on hand? Which party has the superior right? In truth, the existence of surplus income in the hands of the trustee is a mere accident. If the life tenant had died so that he was entitled to no more income, there would be nothing out of which to recoup; and so also, if the trustee had done what he really ought to do, viz: pay out the other income as he got it.

Certainly, if the trustee is bound to keep other income on hand in order to recoup the overpayment, then the supposed right of the life tenant to the net current rents will do him little good. And if he is not bound to keep other income on hand, then recoupment of the overpayment will depend entirely upon the accidents of administration, or

the diligence of the life tenant in demanding that his payments of income be kept up to date.

I also think that each property should be dealt with separately. There is no more reason for considering all the foreclosed properties together than there is for considering the income from the foreclosed properties together with the other income of the trust estate. Each salvage operation is separate. If there should in the end be a loss on one property, that loss should not be deducted from a profit on the others. If a salvage operation is showing current revenue, that revenue ought not to be held back from the life tenant in order to take care of current losses on other properties; and possibly the trustee would feel that it ought to hold back current revenue in hand to take care of future losses.

I think I ought to comment on the fact that the life tenants and their exceptions merely present principles and not figures. They ought to have presented a schedule of their own so that the sustaining of exceptions would change the figures, and they ought by their exceptions to have pointed out what the correct figures would be according to their contentions. Otherwise, we do not know the amount involved in the controversy or how it is made up. Particularly is this true of the exception which complains of the failure of the auditing judge to "define net rents." We sit to award money, not to coin definitions. The life tenants do not present any definition of their own, and do not complain that the auditing judge has done thus and so because of his erroneous view of the law.

The trustee ad litem representing principal has also filed exceptions. But he is not aggrieved by the schedule. When it comes to the result, that which he contended for has been done. It is true that in arriving at the result the auditing judge has expressed an opinion on the law which in another matter between other parties may be injurious to the interest now represented by the trustee

ad litem. But exceptions are taken to results, and speak in dollars, not in principles.

I would sustain the exceptions of the life tenants and send the matter back to the auditing judge in order that the schedule of distribution may be restated.