## In re Scott's Trust

228

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*Dechert, Smith & Clark,* for petitioner.

*Richard T. McSorley,* contra.

LADNER, J., January 3, 1941.—From the pleadings the following undisputed facts appear. Petitioner is the committee of Thomas A. Scott (formerly Thomas A. Scott Thropp), a mental incompetent, who, by deed of trust dated April 1, 1931, conveyed to the Fidelity-Philadelphia Trust Company, trustee, certain securities, mortgages, and other properties. The deed of trust makes the net income of the trust estate payable to the settlor for life, and thereafter in ·equal shares to his children "and/or descendants of deceased children per stirpes," until termination of the trust, when the principal is to be paid to the descendants of the settlor, per stirpes, with gifts over not necessary to be recited, in default of such descendants; and upon failure of the gifts over, then to certain charities mentioned in the deed of trust.

The trustees filed a triennial account covering the period from April 1, 1931, to May 2, 1936, which was adjudicated by Judge Bok on May 19, 1936, and duly confirmed. This adjudication states that the account was "apparently filed for the purpose of raising the question of the right of the settlor to revoke the deed", but when the matter came up for audit his counsel stated that the question would not be raised. Accordingly, the only ques-

tion which the auditing judge regarded as raised and before him was whether the costs of the accounting should be charged to principal or income. He ruled the latter. No exceptions were filed to his ruling and the account thereafter became confirmed in due course.

Further light is shed upon this proceeding by the amendment to the petition for review which was filed November 27, 1940, which avers in substance that, at the time of the audit of the account sought to be reviewed, Thomas A. Scott, donor of the trust and life tenant, was not in "full possession of the mental faculties of a normal man", and that less than two months thereafter a committee in lunacy was appointed for his person and estate by the Circuit Court of Baltimore County, Md. The petition for review now before the court is filed by that committee and prays for a reopening of the adjudication and a re-audit of the account. All remaindermen join in except the minors. For these and for the unascertained interests the court appointed a guardian and trustee ad litem, who has filed an answer in opposition to the petition.

The reason urged for review is that during the period of administration of the trust the trustee had paid the deficiency in the carrying charges on foreclosed real estate out of the general income from other investments. It is averred that this was erroneous in two aspects, namely, in charging against income that which should properly have been charged against principal (Nirdlinger's Estate (No. 2), 327 Pa. 171), and in failing to segregate the receipts and expenditures of each foreclosed property in accordance with Nirdlinger's Estate, 331 Pa. 135 (1938). It is also averred that this method of charging the deficit to income, though now conceded to be erroneous, was in accordance "with what was generally assumed by the legal profession to be the proper practice and therefore the apportionment made in that account was an error of law apparent on the face of the record, to correct which this court ought now to grant relief."

The guardian and trustee ad litem objects to the review and argues that the matters urged for a review are not errors of law apparent on the face of the record as that term has been construed, citing, among other authorities, Perry v. Phelips, 17 Ves. 173, 177, 34 Eng. Repr. 67, and Hoffman et al. v. Knox et al., 50 Fed. 484; also that if the law was in fact changed by the Nirdlinger cases as argued by petitioner, this would be no ground to open up an adjudication absolutely confirmed prior to these decisions.

We agree with the learned guardian and trustee ad litem that there is no error apparent on the face of the record nor are we inclined to rule that a change in the law (if any there be) requires us to reopen accounts absolutely confirmed before such change. Neither fancied changes of the law nor errors in mistaking the law are of themselves adequate grounds for review. The general rules governing the granting of petitions of review in this court have been recently restated by the late Mr. Justice Barnes in Osterling's Estate, 337 Pa. 225, at page 227, in the following language:

"Under Section 48 of the Fiduciaries Act of June 7, 1917, P. L. 447, which provides for petitions of review to correct errors in an account, auditor's report, or adjudication, it is settled that such review will be granted as of right only (1) where there are errors of law appearing upon the face of the record; (2) where new matter has arisen since the confirmation of the account or decree; (3) where justice and equity require a review and no person will suffer thereby: *Troutman's Est.*, 270 Pa. 310; *Willing's Est.*, 288 Pa. 337; *Bailey's Est.*, 291 Pa. 421; *Reamer's Est.*, 331 Pa. 117."

Even though we regard this as a case where there has been no change in circumstances and no person would suffer thereby, nevertheless, a review is unnecessary for petitioner can attain his end without a review.

We observe that, according to the record, Judge Bok did not pretend to pass upon the question of whether the defi-

ciency arising from carrying the foreclosed properties was properly chargeable to income or principal. Nor, in view of the fact that the "salvage operations" were not completed at that time, can it be said the question was necessarily before him. So, as we see it, the real question for our decision is whether a mere confirmation of an account showing that the deficiencies of the carrying charges of foreclosed properties were paid out of income without the auditing judge being requested or required to approve the same is res adjudicata on the question of proper allocation, at the audit of a subsequent account. We think not.

It is plain from the many apportionment cases that have recently arisen that where salvage operations are being conducted of foreclosed real estate, unproductive in whole or part, it is necessary for a trustee to find the money somewhere with which to pay the carrying charges. This he may do by borrowing from outside parties, or he may take it from uninvested funds available in the principal, or he may take it for the time being out of undistributed income, but wherever he takes it, it is impliedly, if not expressly made so, subject to future proper adjustment and return to the fund from which it is taken when the salvage operation has been completed and the fund brought before the court for distribution. That this view accords with the decisions of the Supreme Court, and with our own, is made clear by our brother Stearne, J., in the opinion recently handed down in Romberger's Estate (sur trust for Mary Evans), 39 D. & C. 604, in which it was said:

"Until the real estate is actually sold, and a fund is before the court for distribution, there exists no completed salvage operation. Under such circumstances, decisions relating to questions of allocation as between income and principal are mostly premature. This accounting is therefore solely to verify actual receipts and disbursements of such items. When the salvage operation is finally completed, and upon an accounting when there is a fund before the court for distribution, the parties may

then appear and make application for equitable allocation of the funds as between income and principal: Nirdlinger's Estate (No. 2), 327 Pa. 171. Confirmation of the present accounts, as respects such items, merely approves the actual receipts and expenditures, and is not intended to preclude the parties from subsequently having the fund allocated as above indicated. This right is expressly reserved to them. See Bullitt's Estate, 308 Pa. 413; Neafie's Estate, 325 Pa. 561; Mark's Estate, 2598 of 1932, opinion of Klein, J. (not reported)." See also Roney's Estate, 227 Pa. 127.

It is to be noted that the mental condition of the life tenant at the time of the filing of the account removes from consideration any question of acquiescence or acceptance of the accounting heretofore made.

We, therefore, rule that under the circumstances of this case the trustee is not precluded from restoring to the income account items paid thereout to meet the deficiency of the carrying charges of the foreclosed properties. Upon a new accounting the trustee may charge the same in a manner conceived to be proper and have an adjudication thereon by the judge who audits that account.

The petition for review is dismissed.