John F. Nixon v. Commissioner. Theresa B. Nixon v. Commissioner.
Nixon v. Commissioner
Docket Nos. 4120 and 5303.
United States Tax Court
1945 Tax Ct. Memo LEXIS 120; 4 T.C.M. (CCH) 741; T.C.M. (RIA) 45245; July 6, 1945
John F. Nixon, Esq., for the petitioners. Laurence F. Casey, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By these consolidated proceedings petitioners challenge respondent's determination of deficiencies for 1939 as follows: John F. Nixon
$472.29
Theresa B. Nixon
515.29
*121 The question presented is whether amounts awarded in 1939 by the Orphans Court of Pennsylvania to petitioners as life beneficiaries of a trust constitute taxable income for that year. The case was presented by a stipulation of facts and documentary evidence therein referred to and introduced as exhibits at the hearing. Findings of Fact All of the stipulated facts, including those shown by the exhibits, are hereby found accordingly. Petitioner John Nixon filed his personal income tax return for the year 1939 in the office of the collector of internal revenue for the second district of New York; Theresa Nixon filed her personal income tax return for the year 1939 in the office of the collector of internal revenue for the first district of Pennsylvania. Samuel F. Nirdlinger (sometimes known as Samuel F. Nixon) died November 13, 1918, a resident of Philadelphia, Pennsylvania, leaving a will which was duly probated before the Register of Wills and Orphans Court, Philadelphia, Pennsylvania. Under paragraph Fifth of the will it was provided that the residue of the estate be held by trustees and invested in first mortgages on real estate or other good and safe investments and the *122 income paid over to designated beneficiaries, including petitioners who during the taxable year were entitled to receive the following indicated percentages of the trust income: John F. Nixon
34 percent
Theresa B. Nixon
29 percent
Prior to the taxable year part of the trust estate had been invested in mortgages which the trustees had foreclosed. Twenty-five pieces of real estate had been acquired in such foreclosures. From 1934 through 1938, all the properties thus acquired were sold for amounts less than their respective mortgages and defaulted interest. From the time of acquisition of the foreclosed property until they were disposed of, the income of the productive properties was applied by the trustees to carry all of the properties and were so treated by the trust estate for income tax purposes. Such income was not reported in any year prior to 1939 by the beneficiaries of the trust. Subsequent to the filing of the Third Account of the trustees and as a result of exceptions filed thereto by petitioners and other life beneficiaries, the Supreme Court of Pennsylvania decided in In re Nirdlinger's Estate, 327 Pa. 171, 193 A. 30. that where the trustee *123 acquired property by a mortgage foreclosure which is thereafter sold at a loss, the net proceeds of the sale must be apportioned between the life beneficiaries and the remaindermen according to a rule of apportionment there set out. Following this decision the trustees in a supplement to their Fourth Distribution Account apportioned to the income beneficiaries from the proceeds of sales of the properties a net amount of $11,147.15, the following amounts of which (less commissions) were distributed to petitioners: John F. Nixon
$3,790.03
Theresa B. Nixon
3,232.67 The $11,147.15 was composed of (1) $3,760.69, representing apportionment of the net sales proceeds remaining after commissions and repayment of certain advances to the income account, (2) $896.70, representing repayment of interest (less commissions) on advances to pay operating expenses of the properties, and (3) $6,489.76, representing repayment of advances covering net operating deficits of the properties. On June 9, 1939, the Fourth Account of the trustees and supplement thereto was audited by the Orphans Court and, as a result of the Court's adjudication thereon confirmed nisi June 29, 1939, there *124 was awarded and the trustees were authorized to transfer, to the income beneficiaries (1) the sum of $10,186.83, being the above $11,147.15 less $960.32, representing the excess of operating costs over a 4 percent return or allowance to income pursuant to the decision of the Supreme Court of Pennsylvania; (2) the sum of $5,457.88, representing 1939 carrying charges on real estate operated at a loss which was properly chargeable against principal but which had been previously charged against other income of the trust. This was pursuant to further litigation of the estate, In re Nirdlinger's Estate, 331 Pa. 135; 200 A. 656. The adjudication of the Orphans Court fixed petitioners' participation in these amounts and other income of the trust at 34 percent and 29 percent, respectively, for John Nixon and Theresa Nixon. The distributions made under the apportionment required by the decision of the Supreme Court of Pennsylvania (the formula being that of the American Law Institute, section 241, Restatement of the Law of Trusts) were made in cash regardless of whether the trustees received all cash on the sales of the properties or cash and purchase money mortgages. *125 Respondent included the $10,186.83 and $5,457.88 in the 1939 distributable income of the trust and the indicated portions thereof in petitioner's respective incomes for that year. In 1939 the trustees filed fiduciary income tax return 1041 which did not include any of the sums included by respondent in petitioners' taxable income. No sales of real estate from which moneys were ultimately received by petitioners occurred in 1939, but they were made in 1935, 1936, 1937, and 1938. Opinion But for a single question, the present issue would be completely covered by the decision in Robert W. Johnston, 1 T.C. 228, affirmed (C.C.A., 2nd Cir.), 141 Fed. (2d) 208, certiorari denied, 323 U.S. 715. That case decided that where, as here, life tenants receive a part of the proceeds of the sale of defaulted property, it is includible in their taxable income and "must, as far as petitioners, the life income beneficiaries, are concerned, be considered as 'income' received by them, since under the instrument creating the trusts petitioners were only entitled to receive 'income' and nothing else." In that case, however, the property was sold, and the *126 proceeds allocated, in a single year. Here, the sales covered a longer period, and all had been completed before the distribution was made in the tax year in issue. This circumstance furnishes the ground for petitioners' insistence that if they are subject to tax at all, the income in question was "currently" distributable under section 162 (b) in prior years and the present deficiency was for that reason alone improperly determined. But the result in the Johnston case was not founded only upon section 162. The opinion includes the additional ground that "If we are wrong in holding that section 162, particularly subparagraph (b) thereof, is applicable to these proceedings, we think petitioners would be taxable on the cash amounts in question under section 22 (a)." For all that appears, these petitioners are cash basis taxpayers. Under section 22 the year of taxation would be the year of receipt by them. Even, however, if we confine ourselves to section 162, we find no different result called for. The history of these distributions makes it apparent that they were not, in reality, susceptible of payment in any prior year. While the money had, to be sure, been collected, its disposition *127 was the subject of protracted litigation leading in fact to the establishment, apparently for the first time, of a "Pennsylvania rule" of apportionment. See In re Nirdlinger's Estate, 327 Pa. 171, 193 A. 30. That the trustees were not in a position to make the distributions sooner appears from the decree confirming their account, which recites as a "reason or purpose of the filing of the account * * * (2) to have confirmed certain apportionments between principal and income of proceeds of sales of real estate acquired through foreclosures of mortgages * * *." Cf. Blair v. Commissioner, 300 U.S. 5. If it would have been unreasonable, as we think it would, to expect the trustees to make payment until they had thus ascertained and established the correct amounts, then it seems to follow that the income in question was not in reality distributable currently during the earlier years. We think petitioners' situation is well within the principle of Robert W. Johnston, supra, and, on its authority, Decisions will be entered for the respondent.