## Kinzer's Estate

*Clay M. Ryan* and *J. R. Kinzer*, for accountant and remaindermen.

*F. Lyman Windolph*, for estate of life tenant.

APPEL, P. J., April 3, 1947.—The final account of The Conestoga National Bank of Lancaster, substituted trustee for the use of Katharine F. Roland in the estate of Anna M. Kinzer, deceased, has come before this court for audit and distribution, following the death of Katharine F. Roland, life beneficiary, on June 4, 1944.

The life beneficiary's executor has presented a claim alleging that by reason of the deficiency in the income of the trust fund the amount of money before the court for distribution should be apportioned between the estate of the life beneficiary and the remaindermen. The remaindermen have objected to any such apportionment. From the notes of audit and the other papers filed in the estate of Anna M. Kinzer, and a stipulation made between the attorney for the First National Bank of Media, executor of the will of Katharine F. Roland, deceased, and the attorneys for other parties interested as remaindermen, the following facts are found by this court:

Anna M. Kinzer died on January 26, 1924. She left a will and three codicils thereto, which were duly probated, and letters testamentary thereon granted to the executors therein named. It appears that by the will three cousins of testatrix were entitled to receive absolute bequests or shares in testatrix's residuary estate, but in the third codicil, she provided as follows:

*"Fourth:*—Whereas in my foregoing will and second Codicil, I have made certain provisions and directions for the distribution of my Residuary Estate, *and now* being desirous of altering the same in respect to the shares therein bequeathed unto my cousins John Roland, Anna Roland Diller and Katharine F. Roland (it being my intent and purpose that each of my said three cousins shall only be entitled to receive the income for life of the share of my residuary estate bequeathed to each of them). *Therefore,* I do hereby revoke the absolute bequests of the shares of my residuary estate bequeathed to each of them, *and I do hereby* give and bequeath unto The Lancaster Trust Company, of Lancaster, Pa., *In Trust,* the several shares of my residuary estate which the said John Roland, Anna Roland Dillar and Katharine F. Roland would have been entitled to receive had this Codicil not been made; the

said The Lancaster Trust Company Trustee to properly invest and manage the same, and to pay the net income thereof, after deducting proper costs and expenses, annually, unto the said John Roland, Anna Roland Dillar and Katharine F. Roland, respectively, for and during the term of their respective lives, *and upon the decease* of any and each of the said John Roland, Anna Roland Dillar and Katharine F. Roland, *I direct* the *Corpus* or *Principal,* of the said *Trust Fund* so held for his or her benefit, to be distributed equally, share and share alike, to, and among the children of my cousins, Isaac Hiester, Horace Roland, Mary R. Kinzer and George O. Roland, namely:—William M. Hiester, George B. Hiester, Emily Hiester, Dr. Charles Roland, Arthur Roland, Ethel Voorhees, Cornelius Roland, J. Roland Kinzer, Theodore C. Kinzer, Dr. Horace C. Kinzer, Elizabeth C. Kinzer, Seeger Roland and Ralph Roland, or those of them who shall be living at the time of the respective deaths of the said John Roland, Anna Roland Diller, and Katharine F. Roland."

By adjudications of this court made on September 15, 1924, February 16, 1925, and June 21, 1926, the sums making an aggregate total of $46,883.20, were awarded to the Lancaster Trust Company, trustee under the will of said Anna M. Kinzer, deceased, for the use of said Katharine F. Roland.

The trustee made three investments of said funds: It invested the sum of (1) $20,932 in a participation in a mortgage for $200,000, dated January 17, 1925, given by the Pennsylvania Soap Co. to the Lancaster Trust Company. It also invested (2) $25,000 of the trust fund in a participation certificate in a mortgage in the original amount of the principal sum of $182,500 (afterwards reduced to $181,400), given by Harry Schlotzhauer et al., on the premises at 120-122 North Queen Street, Lancaster, Pa., known as the Hotel

Pennsylvania. (3) This investment was a participation certificate of $960 in the Lancaster Trust Company mortgage pool.

The Lancaster Trust Company closed on January 12, 1932, and subsequently was liquidated.

On August 17, 1933, the Orphans' Court of Lancaster County appointed the Conestoga National Bank of Lancaster as substituted trustee for Katharine F. Roland in the estate of Anna M. Kinzer, deceased.

On the Pennsylvania Soap Company mortgage participation, interest was paid until January 15, 1934, when it was defaulted and the mortgage was liquidated under decree of the Court of Common Pleas of Lancaster County, and the trustee of this estate received on November 27, 1943, the sum of $5,585.98 on account of the principal investment in said mortgage, and $104.66 on account of income.

The liquidation of the Pennsylvania Soap Company mortgage occurred during the lifetime of Katharine F. Roland, life beneficiary, and in this court's adjudication filed June 12, 1944, the fund received from this liquidation was apportioned between the remaindermen and the life tenant under the rulings in A. L. I. Restatement of Trusts, §241, and Nirdlinger's Estate, 327 Pa. 171, 331 Pa. 135, and the principal was fixed at $3,698 and the income at $1,572.98. After this adjudication had been filed Katharine F. Roland, life beneficiary, died on June 4, 1944, whereupon the audit of said account was opened, and the adjudication withdrawn, and in an adjudication filed by the court on July 12, 1944, the apportioned amount of income previously awarded to Katharine F. Roland was, under these circumstances, awarded to the First National Bank of Media, executor of the will of Katharine F. Roland in the income account the sum of $1,455.01. By the same adjudication there was awarded to the nine living remaindermen the sum of $3,420.65. These two

sums represented the amount salvaged from the trust fund investment of $20,932.

On March 2, 1934, the Court of Common Pleas of Lancaster County appointed the Conestoga National Bank of Lancaster the substituted fiduciary of the Schlotzhauer mortgage on the Hotel Pennsylvania. At this time interest on the Schlotzhauer mortgage was in default, and on July 9, 1934, the executrix and heirs of Harry Schlotzhauer, deceased, in order to avoid foreclosure proceedings, conveyed the property covered by the mortgage to the Conestoga National Bank as substituted fiduciary of the mortgage, and the latter owned and operated Hotel Pennsylvania until June 1, 1946, when it was sold to Joseph Figari for the consideration of $96,100.

On July 7, 1946, the bank, as substituted fiduciary of the Schlotzhauer mortgage, filed its first and final account in the prothonotary's office of Lancaster County. This account shows that on October 28, 1943, the distribution of one percent of income, was paid to the holders of mortgage participations, and like distributions were made on April 21, 1944, September 22, 1944, January 22, 1945, October 4, 1945, and May 4, 1946. In the above accounting the Conestoga National Bank, a substituted fiduciary of the mortgage, paid certain funds by way of both principal and income to the Conestoga National Bank of Lancaster, as substituted trustee under the will of Anna M. Kinzer, deceased, for the use of Katharine F. Roland.

On November 26, 1946, the bank, as substituted trustee under the will of Anna M. Kinzer, deceased, for the use of Katharine F. Roland, filed a final account of its trusteeship in the Orphans' Court of Lancaster County. This is the account now before the court for adjudication. The total amount of principal realized from the participation certificate from the Schlotzhauer mortgage on the Hotel Pennsylvania in the

amount of $25,000 was $12,147.30, and the total amount of income received on the participation certificate was $1,500, representing six distributions of one percent each in the amount of $250. The account shows that before Katharine F. Roland, the life beneficiary, died, she received two payments of $250 each, and the First National Bank of Media, executor of Katharine F. Roland, deceased, was paid a balance of income and accruals to the date of her death on June 4, 1944, amounting to $54.64, so that the account which is before this court for audit and adjudication as stated by the accountant, including the sum of $719.61 on account of the investment of $960 in the mortgage pool of the Lancaster Trust Company, now shows a balance in the principal amount of $11,886.06, and a balance in the income account of $969.31, making an aggregate amount for distribution of $12,855.37.

It is in the last stated sum that the executor of the life tenant claims an apportionment under the rules of Nirdlinger's Estate, hereinbefore referred to, and which were applied to the accounting of the Pennsylvania Soap Company salvaged amounts because the salvage operation or liquidation of the Pennsylvania Soap Company participation occurred during the lifetime of the life tenant, Katharine F. Roland. On behalf of the remaindermen, objection is made to the apportionment of the moneys received from the Schlotzhauer mortgage because this salvage operation was completed after the death of Katharine F. Roland.

The question of the apportionment of the present funds was argued by counsel at the audit and briefs were submitted by the respective counsel. There is no dispute as to facts above set forth. It appears clear to this court that when Anna M. Kinzer made her will and the codicil thereto hereinbefore recited, she had three beneficiaries for life in mind, namely, John

Roland, Anna Roland Diller and Katharine F. Roland, whose interest in her estate the testatrix fixed as follows: "It being my intent and purpose that each of my said three cousins shall only be entitled to receive the income for life of the share of my residuary estate bequeathed to each of them," and she further provided that upon the decease of any and each of the said life beneficiaries:

"I direct the corpus or principal of the trust fund so held for his or her benefit, to be distributed equally, share and share alike, to, and among the children of my said cousins, Isaac Hiester, Horace Roland, Mary R. Kinzer and George O. Roland, namely:—William M. Hiester, George B. Hiester, Emily Hiester, Dr. Charles Roland, Arthur Roland, Ethel Voorhees, Cornelius Roland, J. Roland Kinzer, Theodore C. Kinzer, Dr. Horace C. Kinzer, Elizabeth C. Kinzer, Seegar Roland and Ralph Roland, or those of them who shall be living at the time of the respective deaths of the said John Roland, Anna Roland Diller and Katharine F. Roland," 13 in number.

In other words, testatrix did not name the remaindermen merely as members of a class, but she particularly indicated them by specific name. At this time it appears that four of said possible remaindermen, Dr. Charles Roland, Arthur Roland, Ethel Voorhees, and Seegar Roland, died prior to the death of Katharine F. Roland, the life tenant, and their estates or representatives have accordingly no interest in the present fund. There are accordingly nine persons who are interested in this fund as remaindermen.

It is obvious that a terrible shrinkage has occurred in the original fund of $46,883.20 through the investment in the participations of the mortgages hereinbefore set forth, the salvage value of which is something over one third of the original amount of principal. During her lifetime, subsequent to the death of

Anna M. Kinzer, life tenant received full interest for a period of eight to 10 years and she received no income for a period of about 11 years. She was undoubtedly disappointed in not receiving income for this period, but by the same token the nine respective living remaindermen, as relatives of testatrix, expected to receive, as their decedent expected them to receive, a respective share in a large trust fund amounting to $46,883.20, while they can actually receive only slightly more than approximately one third of the expectancy. If the claim for apportionment of principal and income be allowed, the present fund for distribution to the remaindermen would be reduced apportionately one third in favor of the deceased life tenant.

It appears to this court that the rules of apportionment between the remaindermen and a life tenant as set up in the Nirdlinger's Estate, were due to an equitable realization of a necessity borne upon the courts out of the thought that a life tenant should not be entirely starved that the future remaindermen might feast at the expiration of the life tenancy. In a prior adjudication of this court during the lifetime of Katharine F. Roland, this equitable principle was applied, and Katharine F. Roland shared in the apportionment of the trust fund as between principal and interest and to some extent therefore received something more than a token of what testatrix expected her to receive. But now we come to the time when the original life beneficiary is no longer here and personally can receive no benefit from any proposed apportionment between principal and interest in the funds presently before the court for distribution. If the doctrine of apportionment were to be applied by this court, the funds could only go to the estate of Katharine F. Roland and through the administration of that estate to parties unknown to this court and, for all we know, also unknown to Anna M. Kinzer, testatrix. Whether Kath-

arine F. Roland left a personal estate, we do not know; whether the funds would be distributed to her legatees or her creditors, or lacking both creditors and legatees, it would escheat to the Commonwealth, we do not know. It would appear that this court should apply an equitable principle and, now that Katharine F. Roland has passed out of the picture personally, that the persons whose names appear in the will of testatrix should receive the fullest possible amounts on account of their remainder interest, as was manifested by the written intentions of testatrix in her will.

In Spear's Estate, 333 Pa. 199, the first syllabus reads, "Apportionment is a discretionary matter and should be refused where practical difficulties make it impossible or it is inequitable and will result in frustrating the settlor's purpose". The second syllabus reads, "Where a trustee forecloses a mortgage, buys the property covered at the foreclosure sale, and thereafter sells it, *while the life tenant is living*, the net proceeds of the sale must be apportioned between the life tenant and remainderman." (Italics supplied.)

It is true that in the instant case there are not the difficulties present which were in the Spear case by reason of the fact that in it 41 properties had been purchased on foreclosure and were still unconverted, and in addition, the trust estate also included certain mortgages and mortgage participation certificates which were in default, but upon which there had been no foreclosure. At page 201 of Spear's Estate, Mr. Justice Kephart said:

"We held in Nirdlinger's Estate (No. 2), 327 Pa. 171, under the apportionment rule, that *living* life tenants, entitled to income at the time of the resale of the properties, were to share in the net proceeds according to the formula adopted in section 241 of the Restatement of Trusts." (Italics supplied.) This opinion closes with the following (p. 203) : "The court below correctly held that the purpose of the testator required the trust

to be terminated as of the date of the death of James Spear, Jr. To hold otherwise would be to reverse the maxim, and compel remaindermen to starve so that creditors and heirs of life tenants, to whom the testator intended no benefit, should feast."

See also Miller's Estate, 43 D. & C. 565, 570, where Gangloff, P. J., after discussing Nirdlinger's Estate, says:

"Of course, in the case at bar we are not dealing with extraordinary dividends or stock rights. In these latter cases earnings accumulated but were not distributed in the form of dividends during a life tenancy and by reason thereof the life tenant acquired what might be termed an embryonic right to, as distinguished from a vested or property interest in, these earnings. This embryonic right passed, upon the death of the life tenant, to the life tenant's estate. There it was an abortive right, that is, valueless, if the trust terminated *with the death of the life tenant* . . ." (Italics supplied.)

Judge Gangloff refers to an embryonic right in the life tenant. Another term to use for the same thing would be an inchoate right, but the meaning would be the same thing. It is a right that the life tenant must exercise and be entitled to if living, but is something that dies with his death.

The present trust terminated upon the death of Katharine F. Roland. This first beneficiary of the bounty of testatrix has died. The rights of the remaindermen, who were formerly secondarily interested as heirs "apparent", became ripened and matured into the rights of full heirs.

Counsel for the executor of life tenant earnestly argues that the Spear case is wholly inapplicable to the instant case and has no controlling effect thereon, because in the Spear case all the work of salvage and liquidation was a complex and tortuous matter which

would extend over an indefinite future. On the contrary, he contends that in the instant case salvage operations have been entirely completed and the net proceeds thereof have been definitely ascertained and are not the result of any speculation upon the sales and liquidation of many properties. While the facts involved in the Spear case did involve complexities of liquidating of a large number of properties, which is a situation not present in the instant case, and the instant case does not involve the insurmountable difficulties and circumstances of the Spear case, nevertheless, the legal principles hereinbefore recited in the Spear case do affect the decision of this court in the instant case. Nor is the instant case involved in the question of successive life estates where it became advisable to make apportionments between principal and income. The question in the instant case is simple and plain, and appeal is made on these facts to discretionary judgment of this court, which during the lifetime of the beneficiary for life had applied the equitable principles of apportionment. Now the lifetime of the beneficiary for life is a closed chapter and in the exercise of a sound equitable discretion this court is faced with the opening of a new chapter in carrying out the intention of testatrix and the application of equitable principles to the rights of living persons. No such simple proposition appears to have reached the appellate courts and except for the quotations of the cases hereinbefore made, this court was unable to find citations. We travel in somewhat of an unchartered sea, but in the light of what has been heretofore said, the award must be made to the living persons who have been particularly and specially named by testatrix, those people whose financial welfare has been so wholly unexpected by testatrix, who in the opinion of this court have sufficiently suffered loss without imposing upon them such large and further diminution which would be called for by the apportionment as claimed.