## Klauder Estate

*Otis W. Erisman* and *Frank F. Truscott*, for accountants.

*James Francis Lawler*, p.p., for guardian and trustee ad litem.

KLEIN, P. J., June 24, 1959.—Charles Z. Klauder died on October 30, 1938, leaving a will and codicil by which, inter alia, he devised and bequeathed his residuary estate to his trustees, in trust, to pay the net income therefrom to his wife, Freda M. Klauder, for life, and at her death to divide the principal into two equal shares, and pay the income from one such share to each of his son, Charles Z. Klauder, Jr., and his daughter, Elfrieda K. Parker, for life, with testamentary powers of appointment, and with gifts over in default of exercise of such powers and in default of descendants, which it does not appear necessary to recite in this adjudication, as a copy of the will is annexed hereto.

The fund presently accounted for was awarded to the present accountants by adjudication of Van Dusen, P. J., dated December 7, 1939, and the occasion of the filing of the present account was the death on November 23, 1957, of George C. Wintringer, one of the trustees.

Freda M. Klauder, surviving widow of testator and primary cestui que trust, is still living and the trust continues for her benefit.

Charles Z. Klauder, Jr., and Elfrieda K. Parker, children of testator and succeeding cestuis que trustent, are also both living and apparently of age and are stated to have living descendants. By decree of this court, dated May 20, 1958, James Francis Lawler, Esq., was appointed guardian ad litem for minors and trustee ad litem for all unborn and unascertained interests.

All parties in interest are stated to have had notice of this audit.

A varied portfolio of shares of stocks of many large corporations was received by the trustees at the inception of the trust. Some of these securities were sold by the trustees at a profit. Stock dividends and rights to subscribe were also received by the trustees during the course of their administration. The manner in which these items are to be distributed has been questioned in view of the following provision made by testator in item eleventh of the will, as revised by the codicil:

*"ELEVENTH:* To the extent that authority may be vested in me by law (whether enacted before or after my death) to designate income and principal, I direct that all stock dividends and extraordinary cash dividends declared upon corporate stock held in any of the trusts herein created, and all rights to subscribe to stock or securities of the issuing or another corporation, shall be treated as income and not as principal; and that all profits and losses realized from the sale or other disposition of capital assets held in the trust shall be treated as principal and not as income."

The accountants have prepared apportionment calculations under three separate schedules:

*"Schedule A* assumes that ITEM ELEVENTH of the Codicil is valid in its entirety.

*"Schedule B* assumes that ITEM ELEVENTH of the Codicil is invalid in its entirety.

*"Schedule C* assumes that the direction in ITEM ELEVENTH of the Codicil with respect to the treatment of capital gains and losses as principal is null and void as being violative of the Statute against Accumulations but that the provision of the Codicil with respect to the treatment of stock dividends, extraordinary cash dividends and stock rights as income is valid. The Accountants have recommended the adoption of this interpretation to the Court at the

previous Audits of the Account and will recommend the adoption of this interpretation to the Court at the Audit of May 4, 1959."

Mr. Truscott, on behalf of the accountants, takes the position that:

(1) Testator's direction in the codicil that "all profits and losses realized from the sale or other disposition of capital assets held in the trust shall be treated as principal and not as income" is null and void and should be disregarded; and

(2) That whether the above quoted portion of the codicil with respect to the treatment of capital gains and losses be invalid or not, the remaining directions of the codicil must be regarded as valid and effective.

All of the living parties in interest who are sui juris have received notice of these calculations and none has raised any objections thereto.

Mr. Lawler, the guardian and trustee ad litem, agrees that the computations are mathematically correct but objects to the manner in which the accountants have interpreted the legal effect of item eleventh of the codicil. He contends that:

(1) The provision in question is valid in its entirety; and

(2) If the provision with respect to the disposition of profit and losses realized from "the sale of capital assets" is held to be invalid, "then the entire provision of the codicil should also be stricken as being inseparable".

The auditing judge, after a careful study of the problem, has concluded that the position of the accounts is correct in all respects.

There can be no question, and it is conceded by Mr. Lawler, that on October 30, 1938, the date of testator's death, the direction to treat gains realized on the sales of capital assets as principal, and not as income,

violated the Act of April 18, 1853, P. L. 503, forbidding accumulations, and was invalid: Maris' Estate, 301 Pa. 20 (1930).

Thereafter, the legislature enacted the Act of May 25, 1939, P. L. 201, permitting the capitalization of extraordinary dividends or profits on the sale of stock, and repealed those sections of the 1853 Act which were inconsistent therewith. This statute provides:

"Section 1. In wills, deeds of trust, or other instruments creating trusts, becoming effective hereafter, provisions directing that extraordinary dividends declared upon corporate stock held in trust, whether payable in cash, stock, rights to subscribe to stock of the issuing or another corporation, or otherwise, or directing that profits realized from such stock, either upon its sale or upon the sale or dissolution of the issuing corporation, or otherwise, shall be treated, in whole or in part, either as principal or income, shall be valid and enforceable."

The guardian and trustee ad litem relies principally in support of his contention upon the following language of the codicil: "To the extent that authority may be vested in me by law (whether enacted before or after my death)." He maintains that this is broad enough to bring this case within the provisions of the 1939 statute.

With this we cannot agree.

Testator referred specifically to authority which "may be vested in me by law", whereas the act clearly limits its application to "wills, deeds of trust, or other instruments creating trusts, becoming effective hereafter." "Hereafter", as used in the statute, can have one and only one meaning, i.e., after May 25, 1939. The will of Charles Z. Klauder became effective on October 30, 1938, the date of his death. The statute, therefore, obviously vested no authority in testator and has no application to the present case.

Moreover, our Supreme Court has definitely ruled that legislation which attempts to designate as principal that which previously had been held to be income cannot constitutionally be applied retroactively to trusts created before the effective date of the statute. See Crawford Estate, 362 Pa. 458; Pew Trust, 362 Pa. 468 (1949) ; Warden Trust, 382 Pa. 311 (1955). Consequently, even if the legislature had attempted to apply the 1939 Act to the present case, such enactment would probably have been invalid.

The guardian and trustee ad litem contends, further, that if we conclude, as we have done, that testator's direction to treat as principal all profits realized from the sale or disposition of capital assets held in the trust is invalid, we must, as a matter of logic and grammatical construction, strike down the entire paragraph. He takes the position that the provisions of this paragraph, which consist of one sentence, are inseparable and that testator could not have intended to apply the first part of this sentence, if the court should strike down the other portion.

The auditing judge cannot agree with this contention. A completely different rule prevails with respect to a limitation which transgresses the rule against perpetuities and a provision directing an accumulation contrary to the statute. The former is void altogether; the latter only for the excess: Leisenring's Estate, 237 Pa. 60, 67 (1912). In Thistle's Estate, 263 Pa. 60, the court said, at page 70:

"The Act of 1853, supra, does not provide or intend that a testamentary disposition containing a direction for, or which necessarily brings about, unlawful accumulations shall be void in toto, but merely that 'such direction shall be null and void,' in so far as it transgresses the law, or, in the words of the statute, 'in so far as it shall exceed the limits of this act.' " See also Maris' Estate, supra.

Testators have always had the right to direct that stock dividends, extraordinary cash dividends, stock rights and similar benefits which flow from the ownership of shares of stocks of corporations shall be treated as income and paid to the income beneficiaries. Such directions are valid. Public policy has always favored the early distribution of benefits under testamentary writings. The evil which the legislature has attempted to correct by enacting statutes prohibiting accumulations is the control of the dead hand over the distribution of estates for unduly extended periods of time. Accumulations are discouraged; early payment of benefits, encouraged.

We are especially gratified that our interpretation of this instrument results in testator's aged widow receiving a substantial sum as additional income. This is in harmony with the spirit of the basic principle upon which the Pennsylvania doctrine of apportionment is premised, that the life tenant should be favored, if possible. See Nirdlinger's Estate (No. 2), 327 Pa. 171, 173 (1937), in which Justice Schaffer, speaking for a unanimous court, said, in directing an apportionment of the proceeds of real estate acquired by foreclosure:

"The foundational reason for this conclusion is that in nearly all instances of long continuing trusts, the life tenants are the primary objects of the bounty of testators, and their incomes should be preserved to them, as far as it is possible to do so, even though it may result in ultimate diminishment of principal to be paid to far off remaindermen. Life tenants should not be required to starve in order that remaindermen may ultimately feast."

The awards herein contained will accordingly be made subject to apportionments to income, in accordance with schedule "C" of apportionment schedules, annexed hereto.

And now, June 24, 1959, the account is confirmed nisi.