Estate of Nicholas E. Thouron, deceased.  Appeal of Nicholas Thouron, Trustee.

[Marked to be reported.]

*Trusts and trustees—Commissions—Allowance of commissions on principal of trust fund before distribution.*

While as a general rule commissions will not be allowed to a trustee on the principal of the trust fund until the termination of the trust or of the trustee's relation to it, there may be circumstances of an unusual and extraordinary character which will require a departure from the general rule. Thus where a trustee has managed an estate during a long period of years without claiming commissions in accounts filed from time to time, and by great care and skill through judicious sales and investments has increased the fund by many thousands of dollars, the court will allow him commissions on the principal of the trust fund, before final distribution or the termination of the trust relation.

Argued March 31, 1897. Appeal, No. 77, Jan. T., 1897, by Nicholas Thouron, trustee, from decree of O.'C. Phila. Co., Oct. T., 1880, No. 175, sustaining exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Reversed.

Exceptions to adjudication.

The facts appear by the opinion of the Supreme Court.

FERGUSON, J., the auditing judge, allowed the trustee $7,500 on account of commissions on the principal fund of the estate.

The court in banc, ASHMAN, J., being absent, sustained exceptions to the adjudication, and disallowed the commissions. FERGUSON, J., dissented from the court in banc. 6 Dist. Rep. 166.

*Error assigned* was in sustaining exceptions to adjudication.

*John G. Johnson*, with him *Dallas Sanders*, for appellant.— As we have said, the allowance to the trustee was not an unreasonable compensation for his completed service in converting real estate into personalty. We submit, however, that in view of the smallness of the charge which he had theretofore made upon his income collections, and of the large amount of services necessarily rendered in looking after the unproductive realty, and in making investments and reinvestments innumerable, this allowance was in every respect proper: Bosler's Est., 161 Pa. 461.

*Henry C. Brown*, for appellee.—For reinvestments no commissions are chargeable : Hemphill's App., 18 Pa. 303.

No case is reported in this state (or in any other that we have seen) in which a commission has been awarded, against opposition, out of the principal of the estate before the termination of the trust. It has been occasionally hinted that, in extraordinary circumstances, a retiring trustee may receive something, but no case presenting the question seems to have arisen: Bosler's Est., 161 Pa. 461.

OPINION BY MR. JUSTICE GREEN, July 15, 1897 :

The account under consideration is the fourth account filed by the present trustee, and its items occupy forty-six pages of

solid printed matter, and vary in innumerable details from twenty-five cents to $179,796. It represents an account of capital and an account of income, including the distribution of the latter, in monthly payments to those entitled. The capital account starts with the balance of assets in hand from the third account, amounting to $179,796, and cash $17,865.60. The aggregate debits of this capital account at its close amount to $315,158.88, and after deducting the payments charged against them the resulting balance to the credit of the account is $302,406.87. Then follows an investment account showing the various changes of investment and new investments of the capital, resulting in an exhibition of securities amounting to $293,543.61 and cash $8,863.26. In addition to the foregoing an income account is annexed with an immense number of items, most of them small, but aggregating $78,283.61, against which are charges, leaving a balance of $51,367.55 which was distributed to the parties entitled in very numerous items, leaving a balance of cash on hand of $1,620.73.

In the income account credit is taken for commissions to the amount of $3,903.44, to which no objection is made. In the capital account no credit is taken for commissions, but a claim for compensation was made before the auditing judge, who allowed the sum of $7,500 in view of the extraordinary character of the circumstances and the length of time through which the services of the accountant were rendered.

A statement of facts sworn to by the accountant and annexed to his account, explained the reasons of his action in regard to compensation, and this was in no way contradicted or impeached as to its correctness. It is upon the record without objection as a part of the account, and was considered by the auditing judge in passing upon the questions raised. From the statements there made it appears that the accountant became sole trustee by appointment of the orphans' court in October, 1880. His first account was filed in January, 1882, and in it he made no claim for compensation. His second account was filed in May, 1891, and again no charge was made for compensation. The third account was filed in April, 1892, on the death of one of the legatees. A credit was taken and allowed for a small commission of $467.31 on the income. The present account was filed in June, 1896, and covered the time from April, 1892

to the date of filing, and in this account large additions were
made to the bulk of the fund. A body of coal land in Schuyl-
kill county was sold for upwards of $100,000. A tract of land
in the state of Texas was sold for $6,180. Both of these prop-
erties were theretofore unproductive, and their value consti-
tuted no part of the capital of the estate in any of the preceding
accounts. The capital as shown by the third account was
$196,661.60, and by the fourth account it was $302,158.88,
exhibiting an increase of $105,497.28. It further appears that
the accountant had never received any compensation whatever
for his management of the capital of the estate. His total sales
of real estate amounted to $164,485. His collections of gross
income amounted to $270,679, and his total transactions on
account of the principal or capital of the estate, including re-
investments, amounted to $749,691, making a total of all items
of $1,020,370, which passed through his hands. His payments
to the legatees were made with unusual promptness, and were
very large in amount. To three annuitants he paid $41,334,
and to each one of the cestuis que trust he paid $29,015.24.
His management of the estate extended over a period of fifteen
and a half years. It was a most successful management in
every respect. His very numerous investments, most of them
in moderate sums, have not resulted in any loss to the estate.
No objection whatever is made to any of his acts and transac-
tions in conducting the affairs of the estate, and nothing but
praise is awarded to him even by the only one of the parties in
interest who excepts, or rather who objects, to the allowance of
compensation for the management of the principal of the estate.
No other objection to any part of the account is made by any
one. The amount of compensation in that connection which
was allowed by the auditing judge, $7,500, is not objected to
as unreasonable, and it certainly is not unreasonable in any
point of view. In addition to all this the cestuis que trust, who
are five in number, acquiesced in the allowance, except one, a
brother, and they make no objection now to the allowance.

In view of all the facts of the case we coincide entirely with
the auditing judge, in regarding this as an exceptional case, and
presenting an instance of extraordinary circumstances, such as
are held sufficient to constitute an exception to the ordinary
rule that commissions cannot be allowed on the principal of a

trust until the termination of the trust or of the trustee's relation to it. The auditing judge was overruled by two of the judges of the orphans' court, solely upon the strict application of the general rule, and not upon any other ground whatever.

In considering the propriety of this ruling it must be borne in mind that this not the case of a fixed, definite amount of a trust fund, which would be diminished by the allowance of commissions upon it. On the contrary it is a case in which the capital of the estate had been very largely increased by the excellent and judicious management of the trustee, and instead of its being reduced by the allowance of commissions, it will still be very much larger after the allowance than it was at the beginning of the account. The reason for the general rule therefore does not exist, and hence that rule is not of controlling force in determining the question. The record does not show what the capital account was when the accountant was appointed in 1880, but it does show that even at the end of the third account in 1892 it was $197,661.60, whereas at the close of the fourth account it was $302,406.87, showing an increase of about $105,000 in the four years and three months over which it extended. It cannot be contended therefore that the capital of the trust will be reduced by the allowance of the very moderate compensation granted by the auditing judge. Nor is it any answer to this to say that the capital was always there, though in a different form. It was unproductive real estate which was originally valued at only $7,000, and it was a kind of real estate which has no fixed value in the market, and whose ultimate money value depends almost entirely upon the skill, the prudence and good judgment of the person who has it in charge. When it is considered that this piece of real estate was so wisely and skilfully managed, that instead of the original valuation of $7,000, the sum of $103,385 was obtained for it and added to the real capital of the estate, it seems incredible that such a thing could be. It seems to us that the circumstances of this estate are of the most unusual and extraordinary character, and most amply justify, and indeed require, a departure from the usual rule regulating this subject. Again it must be considered that the accountant can never again receive this or any other compensation for this particular service. It is conceded that if this were the final account the trustee would be entitled to full compensation as well upon

the principal as upon the income, but so far as this accountant is concerned he would not, upon the settlement of his final account, be permitted to charge any part of the sum now allowed. and hence the estate could not suffer by its present allowance. The authorities, particularly Bosler's Est., 161 Pa. 457, and Mintzer's Est., 18 Phila. 98, recognize the exception of extraordinary circumstances to the operation of the general rule, and when to this is added the fact that the real capital of the fund will not be diminished by the allowance, and that the amount allowed can never be allowed again, all reason for enforcing the general rule disappears. We are clearly of opinion upon a consideration of all the facts of the case that the ruling of the auditing judge was correct, and that the sum of $7,500 allowed by him was a fair and reasonable allowance of the compensation claimed, and we therefore sustain it. The assignments of error are sustained.

The decree of the court below is reversed at the cost of the appellee, and the record is remitted with direction to the court below to correct it in accordance with this opinion.