# Williamson Estate.

Argued November 16, 1950; reargued May 24, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL and CHIDSEY, JJ.

344

*Thomas B. K. Ringe,* with him *John R. McConnell* and *Morgan, Lewis & Bockius,* for appellant.

*W. Albert Sanders,* for appellee.

*Morris Duane,* with him *Maurice Heckscher* and *Duane, Morris & Heckscher,* for *T. Williams Roberts,* Trustee, amicus curiae.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 27, 1951:

A corporate fiduciary presents a "test case" seeking to induce this Court to overrule a long line of cases extending for over a century and a half which established principles of fiduciary compensation. The appeals are an effort to induce *a general revision of the compensation of trustees.* It constitutes an almost perennial attempt by corporate fiduciaries to secure *increased* compensation and also *interim* commissions on principal.

The Philadelphia Orphans' Court decided that it was bound by the many decisions of this Court. It declined to award additional compensation requested by appellant, although expressing the opinion that the request appeared to them to be just and reasonable. It is urged by the able counsel for the trustee—but

vigorously opposed by the learned guardian and trustee ad litem—that the cases establishing these principles should now be overruled. It is asserted that corporate trustees now lose money in trust administration because of added duties and increased costs, which necessitates the "stream lining" of fiduciaries' commissions. It is argued that the requested compensation be applied retroactively.

Ella Williamson, testatrix, died February 15, 1930. Her will, dated January 5, 1925, probated by the Register in Philadelphia County, provided (tenth item) that after payment of various legacies a trust of $40,000 be erected with appellant as trustee, whereunder Margaretta C. Anthony was to receive the income for life and upon her decease the principal of the fund was to fall in and become part of the residuary estate. Under the twelfth item of the will the residue was directed to be held in trust by the appellant-trustee to pay the income to named great nieces and great nephews for their lives and upon the death of each to pay the principal to his or her descendants absolutely. The appellant and testatrix's nephew, Edward C. Dale, were named, and thereafter qualified, as executors of the will. The original record discloses that the first account of the executors was filed on October 30, 1930 and audited by President Judge LAMORELLE who filed his adjudication December 13, 1930. In the account a credit was taken by the *executors* of $5961.44 "commissions 3% on $198,714.69 principal" and $215.75 "commissions 5% on $4314.92 Income". By the schedule of distribution, approved June 13, 1932, $40,000 (in scheduled securities) was assigned to *appellant as trustee* for Margaretta C. Anthony (the trust herein accounted for) and to *appellant as trustee* of the residuary estate of $62,486.93 composed as therein indicated.

Appellant, as trustee for the Margaretta C. Anthony trust, filed its account stating in its petition for dis-

tribution that the reason for such filing "is the termination of . ... the trust" (being the decease of the life tenant); because no account has been filed since its inception and "to permit the accountant an opportunity to present a request for compensation from the principal of the trust".

The account was audited by Judge KLEIN who said in his adjudication: "These proceedings have been undertaken by the accountant as in the nature of a test case, in an endeavor to change the long established rule in Pennsylvania which prohibits a trustee from charging commissions against principal, in the absence of the performance of extraordinary services, until the termination of the trust or the termination of the trustee's connection with the estate."

It is also stated in the adjudication: "By note attached to page 2 of the supplemental account annexed hereto the accountant requested additional credit for an item stated to be 'not yet expended' and designated 'compensation to Fidelity-Philadelphia Trust Company' in the sum of $3,000. It appears from the printed brief of counsel for the accountant, page 8, that the said sum of $3,000 'represents the aggregate of requests for compensation (a) with respect to services rendered in the Anthony Trust in the amount of $1,200 (as to which no credit was taken in the Anthony Account, reservation of the accountant's right to claim same having been recognized in the adjudication of the present Auditing Judge of even date herewith in that trust) and (b) with respect to services rendered to the Residuary Trust, less the principal of the Anthony Trust, in the amount of $1,800' (parenthesis supplied). The statement of proposed distribution requests the Auditing Judge to approve the trustee's request for such compensation.''

Also: "In addition to the commissions claimed by the accountant at this audit, as recited above, the

trustee's position, as stated by Mr. Ringe, its counsel, is that 'in order for it to be adequately compensated for the performance of its duties in the future, it should be entitled to take as compensation in this estate one-half of one per cent of the principal of the trust, part to be paid from principal and part to be paid from income at the end of each year. That is to say, the trustee contends that for future services it is entitled to compensation on a "pay-as-you-go" basis.' "

The learned auditing judge expressed his opinion that while the trustee's request for additional compensation was "entirely reasonable" he declined to award it because of the many decisions of this Court to the contrary. He said: "As a court of first instance, we have no right to ignore the decision of the Supreme Court on an issue which has been so squarely decided. Until such decisions have been overruled by the Supreme Court itself, or the law changed by the Legislature, it is the law of this Commonwealth, and must be respected and followed: (citing cases)."

Upon exceptions, the court in banc refused to reverse the auditing judge's ruling that *the established rule in Pennsylvania prohibits a trustee from charging commissions against principal in the absence of the performance of extraordinary services until the termination of the trust or the termination of the trustee's connection with the estate.* Judge HUNTER, speaking for the court, said: "The Judges of this Court are of the opinion that the rule forbidding interim compensation should be abrogated, but agree with the Auditing Judge that until it has been overruled by the Supreme Court itself, *or the law changed by the Legislature,* it is the law of this Commonwealth, and must be respected and followed." (Italics supplied) Judge LADNER (now a Justice of this Court) wrote a concurring opinion joined in by Judge BOLGER. He stated that he joined in the result but did

not approve of all that was said in the adjudication; that the Philadelphia Corporate Fiduciaries' Association, composed of practically all the trust companies in Philadelphia doing a fiduciary business, has been pressing the Orphans' Court for years to approve a new basis and increased scale of compensation by substituting for the present rates *a new rate of an annual charge of one half of one percent of the trust principal—one half to be paid out of principal and one half out of income.* Judge LADNER further stated that the court declined to do this because contrary to controlling Supreme Court decisions *and* because (a) the Orphans' Court had no knowledge whether the proposed increased scale is fair and reasonable (b) that the scale is proposed not only for new trusts but for pending ones (c) that the repeal of section 45 of the Fiduciaries Act of June 7, 1917, P. L. 447, by the Act of April 10, 1945, P. L. 189, cannot operate retroactively (d) no proof that the overhead of the corporate fiduciary has been fairly apportioned and the portion charged against trust department is fair and just (e) that the necessary information be obtained either by (1) a master appointed by this court or (2) appropriate legislative committee.

The case has twice been argued before us. The first argument was upon the merits. The re-argument was limited to the question whether the Act of April 10, 1945, supra, repealing section 45 of the Fiduciaries Act of June 7, 1917, supra, operated retroactively.

The learned court below accurately stated the existing law relating to compensation of fiduciaries in Pennsylvania and concerning which there is no dispute. Contradistinguished from the early English cases, in Pennsylvania, fiduciaries have always been held to be entitled to fair and just compensation for services rendered. The Legislature, by the Act of June 14, 1836 P. L. 628 sec. 29, 20 PS, 3271, enacted that

the court could allow trustees compensation for their services "as shall be reasonable and just." The amount of commissions is within the discretion of the court: *Taylor's Estate*, 281 Pa. 440, 126 A. 809. This Court held in *Strickler Estate*, 354 Pa. 276, 277, 47 A. 2d 134: "A fiduciary's compensation depends upon the extent and character of the labor and the responsibility involved. Fixing the amount of compensation is peculiarly within the discretion of the court below, which in most cases is better able to judge as to the reasonableness of such charges than the appellate court. Unless such discretion is clearly abused the judgment of the court below will not be disturbed."

While as a matter of convenience the compensation of a fiduciary may be arrived at by way of percentage, the true test is always what the services were actually worth and to award a fair and just compensation therefor: *Montgomery's Appeal*, 86 Pa. 230; *Bosler's Estate*, 161 Pa. 457, 29 A. 57; *Harrison's Estate*, 217 Pa. 207, 66 A. 354; *O'Brien's Estate*, 59 Pa. Superior Ct. 19; *Miller's Estate*, 132 Pa. Superior Ct. 437, 1 A. 2d 523.

While ordinarily five percent has been held to be a reasonable allowance, to such rule there must be exceptions where the amount is small, or where it is large: *Pusey v. Clemson*, 9 S. & R. 204; *Gyger's Appeal*, 74 Pa. 48; *Gilpin's Estate*, 138 Pa. 143, 20 A. 713. It has been argued that the rule of percentage may work an injustice, for example: if five per cent commissions are allowed in an estate of $100,000, but only three per cent if it exceeds that amount, a fiduciary would receive $5,000 commissions on an estate of $100,000 but only $3,150 if perchance the estate would be valued at $105,000. But, as above stated, percentage is used only as a matter of convenience as an initial guide or thumb rule. The matter rests upon the discretion of the auditing judge: *Strickler Estate*, supra, and cases therein cited. See the large collection

of cases in which compensation of fiduciaries has been determined: Hunter's Commonplace Book Vol. 1 section 2 (b) p. 136 et seq.

Attempts have been made to have this Court decide that graduated commissions may be allowed to fiduciaries. We have declined to do this and have decided that there can be no graduated commissions diminishing in higher brackets: *Gardner's Estate,* 323 Pa. 229, 185 A. 804. Cf. *Frick's Estate,* 13 D. & C. 536 (GEST, J.).

We have repeatedly decided that except in extraordinary or unusual circumstances a trustee is to be compensated *only at the termination of the trust or at the ending of the trustee's connection therewith*: *Bosler's Estate,* 161 Pa. 457, 29 A. 57; *Thouron's Estate,* 182 Pa. 126, 37 A. 861; *Penn-Gaskell's Estate (No. 1),* 208 Pa. 342, 57 A. 714; *Snyder Estate,* 346 Pa. 615, 31 A. 2d 132; *Kennedy Trust,* 364 Pa. 310, 72 A. 2d 124. No *interim* commission on principal is originally allowable under the law so declared. Where, however, extraordinary services are rendered, or unusual labor is entailed, an *immediate* allowance is permissible: *Thouron's Estate,* 182 Pa. 126, 37 A. 861; *Penn-Gaskell's Estate, (No. 1),* 208 Pa. 342, 57 A. 714; *Powers' Estate,* 58 D. & C. 379.

The Legislature by the Act of March 17, 1864 P. L. 53, provided: "That in all cases, where the same person shall, under a will, fulfill the duties of executor, and trustee, it shall not be lawful for such person to receive, or charge, more than one commission. . . ." This provision was re-enacted by section 45 of the Fiduciaries Act of June 7, 1917, P. L. 447. Such statutory provision was enforced by the appellate courts: *Hill's Estate,* 250 Pa. 107, 95 A. 426; *Spark's Estate,* 127 Pa. Superior Ct. 364, 193 A. 449, affirmed in 328 Pa. 384, 196 A. 48. This section of the Fiduciaries Act was repealed by the Act of April 10, 1945 P. L. 189,

and which appellant contends operates retroactively upon trusts already in operation.

In modern trust administration, *professional corporate fiduciaries* perform an important function. It undoubtedly would be against public interest if, because of lack of profit, corporate fiduciaries were required to discontinue their service. Yet it must not be overlooked that in fixing compensation of fiduciaries we are required to consider the situation not only of great corporations doing an enormous trust business in large cities, but also the smaller corporations in less populous areas. The same rates of compensation equally apply to individuals and corporations. It should only be if absolutely necessary and in justness and fairness, that compensation of fiduciaries in trust estates should be presently increased, especially since during the past quarter of a century, which included a tremendous financial depression and two major wars, the net return of income to trust beneficiaries has been progressively diminishing and the value of corpus is so frequently found to have greatly shrunken, and in many cases disappeared. In extreme cases, in trusts of unusual duration, the entire principal *could be* greatly diminished or even consumed by the annual allowance of a trustee's commission upon principal. For example, the record in *Curran's Estate*, 310 Pa. 434, 165 A. 842, discloses that, in a charitable trust, testator directed the accumulation of income until the corpus (p. 436) ". . . shall yield annually thirty thousand dollars. . . ." A calculation will demonstrate that testator obviously contemplated a period of approximately 100 years before such result could be attained. Solely because of the wise action of the fiduciary in entering into an extremely profitable improvement lease, only 35 years elapsed before the desired result was accomplished. Had such beneficial lease not been taken, and had the fiduciary annually received one-half of one per cent

of the principal, it may readily be observed that at least fifty per cent of the principal would have been consumed by the payment of trustee's commissions and the termination of the trust greatly retarded.

The principles relating to fixing the amount of compensation to fiduciaries as determined by this Court and the Legislature over the past 150 years, have become firmly established. It may well be that present conditions demand that the system requires general revision. If this be true, such radical change should be made by the *Legislature* and not by the Court. We decline to overrule the host of our decisions over such a long period. We agree with Judge LADNER that even before a change of such magnitude should be enacted by the Legislature, there should be a wide and searching investigation by a legislative committee concerning the entire subject matter, including not only the situation of all corporate fiduciaries but of individual fiduciaries as well.

Nor do the facts in the present case present an appropriate vehicle for overruling the cases hereinabove referred to even were we disposed to do so. The Act of April 10, 1945, supra, repealing section 45 of the Fiduciaries Act of 1917, supra, which prohibited the same individual from receiving commissions both as executor and trustee may not be applied retroactively. Appellant, the corporate fiduciary, accepted this trust in 1930 under the law as it then existed. It was paid in full (except for commission thereafter received by it on income it received and distributed). Such acceptance fixed the rights, liabilities, exemptions, defenses and expectations of both life tenant and remaindermen. Their rights were vested under what necessarily is an implied contract. Such rights having vested, and appellant having been paid in full, the imposition of additional compensation under a retroactive interpretation of this statute would be unconstitutional under the

Fourteenth Amendment of the United States Constitution: *Farmers National Bank and Trust Company v. Berks Co. R. E. Co.*, 333 Pa. 390, 5 A. 2d 94; *Willcox v. Penn Mutual Life Insurance Co.*, 357 Pa. 581, 55 A. 2d 521; *Crawford Estate*, 362 Pa. 458, 67 A. 2d 124; *Borsch Estate*, 362 Pa. 581, 67 A. 2d 119; *McKean Estate*, 366 Pa. 192, 77 A. 2d 447.

Appeals dismissed; decrees affirmed at the cost of appellant.

Mr. Justice LADNER, having sat in the court below, did not participate in this opinion.

––––––

CONCURRING OPINION BY MR. JUSTICE BELL, July 3, 1951:

Mr. Justice STEARNE has written a very able exposition of the existing law and has decided that the Act of April 10, 1945, is not retroactive and therefore the decree of the Orphans' Court must be affirmed. With all of this I fully concur; but at that point we part.

This was *a test case to secure increased compensation* for a trustee who had also been executor, as well as *to secure interim commissions* on principal; incidentally involved were a number of related and important questions. These questions or problems have been vexing fiduciaries, laymen, the bench and the bar.

There has been a very great change in conditions in recent years, and it is trite but true to say that changing times and conditions sometimes require changes in our law. The adage of Sir Edward Coke is particularly appropriate: "Reason is the life of the law." I believe that if the reason for a rule or principle of law no longer exists and changed conditions have made it unwise or unjust, to continue it unchanged only brings the law into public disrepute. If the law is judicially made, it can, and if no property or contract

rights are involved, it should be judicially changed if justice requires.

Because the questions presented in this case are of such great importance to the community, this Court should, in my judgment, avail itself of this opportunity to (a) change or modify several rules or principles which are now, because of changed conditions, producing inequity or injustice; and (b) erect certain new modern standards for the guidance of all parties who are or may be concerned.

Section 45 of the Fiduciaries Act of June 7, 1917, supra, provided that "In *all* cases where the same person shall, under a will, fulfill the duties of executor and trustee, *it shall not be lawful for such person to receive or charge more than one commission . . .".*

The first question to be decided is: Was the Act of 1945 which repealed Section 45 of the Fiduciaries Act, retroactive or prospective; and if prospective, to what did it apply?

" 'It is a sound and well-settled principle of statutory construction that no law shall be construed to be retroactive unless clearly and manifestly so intended: Painter v. B. & O. R. R. Co., 339 Pa. 271; Farmers N. Bk. & Tr. Co. v. Berks Co. R. E. Co., 333 Pa. 390, 393; Taylor v. Mitchell, 57 Pa. 209. Cf. Article IV, Section 56, of the Statutory Construction Act of May 28, 1937, P. L. 1019 . . .': Com. ex rel. Greenawalt v. Greenawalt, 347 Pa. 510, 512, 32 A. 2d 757.": *In Re: Petition of Bowie Coal Company,* 368 Pa. 102, 82 A. 2d 24.

"When an act is changed or repealed . . . or when the words or meaning of a statute are not explicit or clear, the intention of the legislature is to be gathered not only by a consideration of the new act but also by examining the occasion, reason or necessity for the law; the circumstances under which it was enacted;

---

* Italics throughout, ours.

the mischief, if any, to be remedied; the object to be attained; and the old law upon the subject: Phipps v. Kirk, 333 Pa. 478, 5 A. 2d 143; Orlosky v. Haskell, 304 Pa. 57, 66, 155 A. 112'': *Martin Estate,* 365 Pa. 280, 283, 74 A. 2d 120. In the light of these authorities we are reluctantly forced to the conclusion that the Act of 1945, while remedial, was intended to be *prospective only.* However, the legislature clearly and specifically says: "This Act *shall take effect immediately* upon its final enactment"; and it is here that I depart from the majority opinion. I would hold that the Act, as it clearly states, *takes effect immediately* upon its enactment; and, therefore, a trustee who was an executor-trustee *may be entitled,* in the discretion of the Orphans' Court, *to compensation* for services which he renders after the Act went into effect, i.e., after April 10, 1945.

The next question that arises is: What compensation is a trustee entitled to and how is it to be computed? By the Act of June 14, 1836, P. L. 628, §29, supra, "It shall be lawful for any court . . . to allow such compensation to . . . trustees . . . for their services, as shall be *reasonable and just".* This was merely a declaration of the standard or rule for determining compensation of fiduciaries, which rule has been by now so long and well established that it is universally recognized as the bedrock on which compensation must always be based: *Montgomery's Appeal,* 86 Pa. 230, 234, 235; *Harland's Appeal,* 5 Rawle 323, 330; *Pusey v. Clemson,* 9 S. & R. 203, 208; *Taylor's Estate,* 281 Pa. 440, 443, 126 A. 809; *Harrison's Estate,* 217 Pa. 207, 210, 66 A. 354; *McCaskey's Estate,* 307 Pa. 172, 182, 160 A. 707; *Davidson's Estate,* 324 Pa. 90, 96, 186 A. 796; *Crawford Estate,* 340 Pa. 187, 197, 16 A. 2d 521; *Reid's Estate,* 250 Pa. 103, 95 A. 392. What is reasonable and just, or as it is sometimes expressed, fair and just compensation is a matter for the

discretion of the court below, subject to review by an appellate court: *Strickler Estate,* 354 Pa. 276, 277, 47 A. 2d 134; *Taylor's Estate,* 281 Pa. 440, 443, 126 A. 809.

In accordance with the objects sought by the repeal of Section 45 of the Fiduciaries Act, namely, to allow a trustee to receive increased or additional compensation, I would carry out the legislative intent and give recognition and effect to the vastly changed conditions which we all know have occurred in the last 15 years. To accomplish these objectives, *I would allow the Orphans' Court to fix a trustee's compensation with only three qualifications or limitations*: (1) that *it must be reasonable and just;* (2) that it can be awarded only under proper circumstances and at a proper time; and (3) that it is, of course, subject to review by the appellate courts. Compensation, popularly and frequently referred to as commissions—although compensation, not commissions, is the correct and proper standard: *McCaskey's Estate,* 307 Pa. 172, 182, 160 A. 707; *Harrison's Estate,* 217 Pa. 207, 209, 66 A. 354; *Gardner's Estate,* 323 Pa. 229, 238, 185 A. 804; *Montgomery's Appeal,* 86 Pa. 230, 234, 235—is often determined or "arrived at *as a matter of convenience by way of a percentage . . .*": *Montgomery's Appeal,* 86 Pa. 230, 234; *Harrison's Estate,* 217 Pa. 207, 209, 66 A. 354; *Bosler's Estate,* 161 Pa. 457, 462, 29 A. 57; *Taylor's Estate,* 281 Pa. 440, 443, 126 A. 809. Notwithstanding these authorities, we decided in *Gardner's Estate,* 323 Pa. 229, 239, supra, that the court cannot fix the compensation by way of commissions *on a sliding scale or on a graduated percentage basis. Since this is merely a convenient rule-of-thumb method of determining and fixing compensation,* it seems to me that there is neither reason nor necessity for continuing the prohibition which *Gardner's Estate* unnecessarily and unwisely established.

How should compensation be determined? Compensation should be determined, fixed and awarded upon a consideration of (1) *the labor and services* which were performed (which, in turn, include a consideration of the nature and difficulty of any problems which were involved); (2) the *responsibility* incurred; (3) the *time* expended; (4) the *size* of the estate; and (5) the *results* of the fiduciary's services.

How large can a trustee's compensation be? Every man, woman and child in America knows that *what was reasonable and just* compensation in 1900 or in 1910 or in 1920 or in 1938 is—because of the tremendous increase in the cost and expenses of everything—*not just or adequate today.* I would, therefore, *remove,* as far as future cases are concerned, the *3% ceiling* which apparently was fixed in estates of $500,000. or over by our decision in *Gardner's Estate,* 323 Pa. 229, supra, and in *Quigley's Estate,* 329 Pa. 281, 198 A. 85; and I repeat I would allow the Orphans' Court initially to determine what was reasonable and just compensation in accordance with the standards herein established. In determining what is fair and just compensation, consideration should be given, in my judgment, not only (a) to the services rendered by the trustee (as hereinabove more particularly detailed); but also (b) to the number of trustees, if there be more than one, (not forgetting the interest and right of an individual trustee to reasonable and just compensation in accordance with his ability, services and responsibility); and (c) to the interests, rights and welfare of (life tenants and) remaindermen who, as compared with the fiduciaries, were undoubtedly the primary objects of testator's interest and concern.

The trustee likewise desires a modification of our long established rule *which forbids interim compensation* even during a long trust: *Bosler's Estate,* 161 Pa. 457, 29 A. 57; *Snyder Estate,* 346 Pa. 615, 622, 31 A.

2d 132. This rule is so unnecessarily harsh, especially in the case of an individual trustee who, under the present law, (unless he is also an executor) would never (personally) receive any compensation on principal if he dies prior to the termination of the trust, that this Court has itself breached it and in exceptional cases has allowed interim compensation on principal to be paid before the trust terminated or before the particular trustee's relation to it ended: *McCaskey's Estate,* 307 Pa. 172, 182, 160 A. 707; *Penn-Gaskell's Estate (No. 1),* 208 Pa. 342, 344, 57 A. 714; *Thouron's Estate,* 182 Pa. 126, 37 A. 861; *Snyder Estate,* 346 Pa. 615, 623, 31 A. 2d 132; *Bosler's Estate,* 161 Pa. 457, 29 A. 57. I thoroughly agree with the judges of the Orphans' Court of Philadelphia County who are unanimously of the opinion that "the standards of commissions payable to a trustee for the management of a trust should be revised in favor of increased compensation . . . [and] the rule forbidding interim compensation should be abrogated" in a long-term trust. There is no fairness or justice in any longer applying such a principle to such a trust. On the other hand, the proposed principle or practice advocated by the corporate fiduciary of taking *annual* compensation by way of commissions, based on the annual market value (or even the inventory value) of the principal of the estate, is so fundamentally contrary and antagonistic to all our authorities, and to our philosophy of trusts and their preservation, and to our long established policy of awarding compensation only for services which were rendered during the entire trust; and the likelihood of the proposed practice producing diminution of or disaster to the trust is so great—that for all these reasons I believe such new practice or principle would be approved only if authorized or required by an act of the legislature.

One other important question remains to be considered. The majority opinion interprets the effect of

the repeal of Section 45 of the Fiduciaries Act to apply only to executorships and *trusts created after April 10, 1945,* for the reason that prior thereto the rights of the testator or of the remaindermen *had become vested.* I agree that if property or contract rights had become vested at the audit in 1930 or before, they could not thereafter be changed by the legislature: *Crawford Estate,* 362 Pa. 458, 467, 67 A. 2d 124; *McKean Estate,* 366 Pa. 192, 77 A. 2d 447. What were these property or contract rights and how did they become vested? The majority say these rights arose out of a contract and the fiduciary has been paid his compensation in full; and consequently, the imposition of additional compensation would impair vested rights and make the Act of April 10, 1945 retroactive and unconstitutional. *Concededly there never was any written or oral or specific contract;* and the contract which the majority *implies and which it refrains from defining* is nothing but a creation or invention of the Court. The contract which the Court implied was, I deduce, that the testator or the remainder-men would pay (at the audit of the executor's account) one commission on principal and the executor-trustee would accept this one commission as payment in full for *all* services which he had rendered as executor and which he would thereafter render as trustee. To avoid injustice which would occasionally result from construing the Fiduciaries Act literally, this Court has allowed and the various Orphans' Courts throughout the Commonwealth have often allowed an executor-trustee *"to charge and receive more than one commission",* (apparently contrary to the clear language of Section 45 of the Fiduciaries Act), namely, an additional commission for unusual or extraordinary services: *Thouron's Estate,* 182 Pa. 126, supra; *Penn-Gaskell's Estate (No. 1),* 208 Pa. 342, supra; *McCaskey's Estate,* 307 Pa. 172, supra; *Powers' Estate,* 58 D. & C. 379.

360

The Court has justified this additional commission on the theory that the commission theretofore paid was to cover only the usual ordinary services of the trustee; and if unusual services were rendered, this was outside the scope of the original (implied but never defined) contract and hence could be compensated by the payment of an additional commission. *One trouble with this theory is that it is unwarranted by and is directly violative of Section 45* which prohibits the payment of more than one commission *in all cases.* All of the decided cases can be harmonized with Section 45 and can be justified by reference and adherence to the (hereinabove mentioned and) well established rule that a trustee is not entitled to any fixed or established rate of percentage or to any fixed or specific amount of compensation but he is entitled to *fair or reasonable and just compensation* for his services "and this is necessarily to be determined by the facts and circumstances of each case: McCaskey's Estate, 307 Pa. 172, 178, 160 A. 707": *Davidson's Estate,* 324 Pa. 90, 96, 186 A. 796. If the initial compensation was (because of unforeseeable circumstances) not reasonable and just, why is not the trustee entitled to additional compensation in order to make his total compensation *reasonable and just?* This would not run afoul of Section 45—it would be merely a payment of fair and just compensation in two or more installments. If there ever was any implied contract between the testator or the remaindermen in his will and the fiduciary, it was necessarily an agreement that the executor-trustee would be paid and would accept for his services—past, present and future—*"fair or reasonable and just compensation".* If it be a fact that the trustee was not paid in 1930 a fair and just compensation for his past, present and future services, *is it not obvious* that no vested right would be infringed by now or hereafter paying the fiduciary an *additional sum sufficient*

*to give him the reasonable and just compensation to which he was under the law entitled, but which the court, lacking prophetic foresight, could not at that time accurately and justly determine?*

While the question of whether any rights had vested in this case may be a close one (Cf. *Nirdlinger's Estate (No. 2)*, 327 Pa. 171, 193 A. 30; *Nirdlinger's Estate,* 331 Pa. 135, 200 A. 656; *Farmers N. Bk. & Tr. Co. v. Berks County R. E. Co.,* 333 Pa. 390, 5 A. 2d 94; *Levy's Estate,* 333 Pa. 440, 5 A. 2d 98; *Demorest v. City Bank Farmers Trust Co., Trustee,* 321 U.S. 36, 64 S. Ct. 384; *Crawford Estate,* 362 Pa. 458, supra) I would hold that if any rights had vested by an implied contract or by the payment of a commission to an executor-trustee for his services in that dual capacity, they would not be violated by awarding to such a trustee additional compensation if the compensation he had theretofore received was not reasonable and just.