## Biddle Estate

*W. Edward Greenwood*, and *Townsend, Elliott & Munson*, for trustees.

*Lawrence E. MacElree*, and *Rodney T. Bonsall*, for guardians of minor.

*John M. Kurtz, Jr.*, guardian and trustee ad litem.

MACELREE, P. J., August 28, 1959.—. . . The fund accounted for pertains to a trust created under the will of Henry W. Biddle, who died July 2, 1923, and

awarded to Fidelity-Philadelphia Trust Company and James D. Winsor, Jr., trustees under the will of Henry W. Biddle, deceased, by decree of the Orphans' Court of Chester County, upon which confirmation of the second account of said trustees, confirmed absolutely as of January 21, 1952, and statement of proposed distribution attached thereto. . . .

No questions arise as to the distribution of either principal or income.

There are, however, three questions submitted to this court for its determination.

First, a requested allowance of additional compensation to the trustees in the sum of $30,000, now reduced to $19,000.

Second, a requested allowance of additional counsel fees for counsel to the said trustees in the sum of $1,000.

Third, the court is asked to fix the compensation to be allowed to the guardian and trustee ad litem appointed by the court.

These questions will be considered and disposed of in the order in which they have been stated. . . .

In connection with the above entitled claim, this court makes the following

### Findings of Fact

1. Decedent, Henry W. Biddle, died July 2, 1923.

2. Letters testamentary upon the estate of Henry W. Biddle were granted July 9, 1923, to Fidelity Trust Company of the City of Philadelphia and James D. Winsor, Jr., executors.

3. The said executors on July 8, 1924, filed their first and final account in which account they claimed as compensation the sum of $35,295.50, being at the rate of two and one-half percent on the sum of $1,411,-820.79, which credit was approved upon the confirmation of said account on August 8, 1924.

4. Fidelity-Philadelphia Trust Company and James D. Winsor, Jr., filed their first account as trustees on September 27, 1941, showing a principal balance of $1,973,438.76, of which $1,260,894.18 represented the amount received from the executors.

5. Subsequent thereto, exceptions were filed to the said first account as trustees and the matter referred to Guy W. Knauer, Esq., as auditor.

6. Upon said audit, compensation was requested for counsel for the accountants in the sum of $1,500, which was allowed, and a further allowance of $1,500 was awarded to the accountants as the expenses of the preparation of suggested apportionment between principal and income, no further compensation being requested.

7. The aforesaid first account of the trustees covered a period from August 11, 1924, to September 1941.

8. The aforementioned trustees filed a second account on October 22, 1951, said account being confirmed nisi December 3, 1951, showing a principal balance of $1,785,706.99.

9. Said second account covered a period from December 1942 to February 1951.

10. No allowances were requested.

11. Said trustees, acting through the corporate trustees and the personal representatives of James D. Winsor, Jr., filed a third account March 19, 1958, being the present account before the court for audit.

12. Since the statement of the first account of the trustees, the said trustees, received additional assets totaling $268,948.15, which did not pass through the hands of the executors.

13. Of the additional receipts of $268,948.15, $207,-773.12 represent the proceeds of sale of real estate and $61,175.03 represent additional receipts of personalty.

14. Compensation at three percent on the additional sum of $268,948.15 would be $8,068.44.

In justice to the trustees, and in order that this record may be complete, the trustees contend that the following additional facts are also pertinent:

A-1. Decedent died July 2, 1923, so that the administration of his estate and the trust have covered a period of 35 years, and the trust is likely to continue for many more since one of testator's grandchildren, Mrs. Sage, is only 53 years of age. . . .

A-6. In summary, the three trustees accounts and schedule of distribution cover a period of 33½ years and contain a total of 304 pages even though the three accounts all contain abbreviated income accounts. They show a total of 1,399 principal transactions, including 75 apportionment calculations, 434 sales, redemptions, etc., and 456 investments made.

A-7. The accounts and schedule of distribution contain 100 pages with respect to income. It is obvious that, if the income accounts had been stated in full, it would show that the total of the items received and disbursed by the trustees has been immense in number.

A-8. There are only two principal items shown in the present account that appeared in the original debits shown in the first account, and one of these is three shares of Pennsylvania Academy of Fine Arts carried at $49.50.

A-9. In addition, with respect to an income beneficiary now deceased, the trustees were named as defendants in an equity suit, garnishees in an attachment execution, garnishees in a foreign attachment, and there were also served upon them by the United States Government five levies and warrants of distraint for unpaid taxes.

A-10. The original receipts from the executors totaled         $1,260,894.18
Since then they also received       268,948.15

or a total of $1,529,842.33
The value of the assets on February 25,
1958, was $2,655,890.75
Transferred to income by apportionment:
Total 432,139.00
Total $3,088,029.75
Or an increase of more than 100 percent
on the total received.
As of June 11, 1958 (Appraisal attached)
the assets had a value of $2,794,259.32
Transferred to income by apportionment:
Total 432,139.00
Total $3,226,398.32

In justice to the court it must be stated that it has made repeated suggestions to local counsel for the accountants that testimony be offered as to the cost to the accountants, if any, of the preparation of the schedules of apportionment involved in the statement of this third account, but that despite said suggestions, no such testimony has been offered, although local counsel has advised the court that such requests have been communicated to counsel for the said accountants.

### Discussion

Fixing the amount of compensation is purely within the discretion of the court below, which in most cases is better able to judge as to the reasonableness of such charge than the appellate court: Strickler Estate, 354 Pa. 276, 277.

The true test is always what the services were actually worth and to award a fair and just compensation therefor: Williamson Estate, 368 Pa. 343, 349.

Otherwise stated, the true test for determining a trustee's commission is compensation for the responsibility incurred and the service and labor performed: Burk Appeal, 378 Pa. 616, 627.

This court holds, however, that it is only in the instances where the orphans' court has the right to

award compensation that the above noted rules of just compensation apply inasmuch as the discretion of the "court below" is circumscribed by certain statutory provisions to which it must adhere.

As of the date of the death of decedent, Henry W. Biddle (July 2, 1923), and the date when the accountants accepted their fiduciary responsibilities (July 9, 1923), and the date when the accountants accepted the trust upon the confirmation of the executors' account (August 8, 1924), section 45 of the Fiduciaries Act of June 7, 1917, P. L. 447, was in effect.

This section prohibited the same individuals from receiving commissions both as executors and trustees.

Such acceptance of their duties under the law as it then existed fixed the rights, liabilities, exemptions, defenses and expectations of both life tenants and remaindermen: Williamson Estate, 368 Pa. 343, 352.

While the Act of April 10, 1945, P. L. 189, repealed section 45 of the Fiduciaries Act of June 7, 1917, P. L. 447, it has been specifically held that the Act of April 10, 1945, may not be applied retroactively: Williamson Estate, 368 Pa. 343, 352.

The most that the Act of May 1, 1953, P. L. 190, provides is a means by which a trustee, entitled to compensation as such, may seek interim compensation prior to the termination of the trust.

This Act of 1953 does not undertake to do what was sought to be accomplished under the Act of April 10, 1945, by applying its provisions where trustees had previously been compensated as executors, because to do so would, in the opinion of this court, render it unconstitutional.

It is suggested in a brief submitted on behalf of John B. H. Carter and Provident Tradesmens Bank and Trust Company, guardians of the estate of Peter M. DaCosta, a minor, that Stotesbury Estate, 85 D. & C. 551, is authority for the proposition that under

the retroactive provisions of the Act of May 1, 1953, allowance can be approved of the item of $8,068.44.

With that contention this court concurs.

What this court believes Judge Holland to have held was that this Act of 1953 had no constitutional objection by reason of its retroactive provisions concerning interim compensation prior to the termination of the trust, inasmuch as the remainder principal interests are not deprived of anything that they would otherwise receive by reason of the fact that principal would be subject to a commission at the termination of the trust and the principal beneficiaries would be properly deprived to that extent.

Nowhere does Judge Holland suggest, nor does this court believe, that the Act of 1953 can be construed to authorize what the Act of 1917, prior to its repeal in 1945, prohibited.

It should be noted that counsel for the accountants avoids resting his contention on such a construction of the Act of 1953, but contends instead that his clients were never awarded adequate compensation as executors and relies upon the legal propositions stated by the late Judge Lamorelle in Kerrigan's Estate, 17 Dist. R. 893.

Kerrigan's Estate, as this court reads it, applies merely to compensation to trustees out of principal where they have not been adequately compensated and is directed toward the allowance of special compensation for special services.

No such situation exists here.

The accountants contend:

1. They received as executors only two and one-half percent on principal assets which would remain in trust for a very long period of time. The administration of the estate and the trust have already covered 35 years and the trust will in all likelihood continue for many more years.

2. They would have received at least this compensation, and could perhaps have received more, even though there had been no trust at all.

3. The care, labor and services of the trustees have produced excellent, if not extraordinary, results.

4. Since they would have been entitled, for their services as executors only, to at least, if not more than, the compensation already received, they should now be compensated for their responsibility and services over the many years that they have acted as trustees.

The accountants further contend:

For their services the trustees have received no compensation on principal. They have received only commissions on income, and at the very low rate of:

1. Two and one-half percent for 24 years, i.e., from 1925 through 1948.

2. Three and three-quarters percent starting in 1949.

The above complaint should more properly be addressed to the legislature than to the court.

This court believes that Williamson Estate, supra, is controlling.

The accountants would have this court adopt the so-called concurring opinion by Mr. Justice Bell: Williamson Estate, supra, p. 353.

Whether this court agrees or disagrees with the logic of Mr. Justice Bell's opinion is immaterial while the law remains as stated by Mr. Justice Allen M. Stearne, deceased, speaking for the Supreme Court.

It is the considered judgment of this court, and it will so hold as a matter of law, that under existing Pennsylvania statutes and the opinions of our Supreme Court that as to these trustees who had been previously compensated as executors prior to the Act of April 10, 1945, no compensation can now be allowed to them from principal for their services as trustees except on assets which did not pass through their hands as

executors, regardless of the character and extent of their services as trustees and regardless of the fact that the trust fund administered has greatly increased in value, and involved at least some unusual services, and that even though said trustees contend that their compensation heretofore claimed and received as executors was inadequate, this court holds that it has no authority, even under the Act of May 1, 1953, P. L. 190, to deviate from the rules above expressed.

This court is of opinion, and has so indicated to counsel for the accountants on numerous occasions, that a proper allowance could and should be made to reimburse the accountants for any proper expenses incident to apportionment calculations and for that reason suggested the desirability of testimony relative to any such expense.

This adjudication has been long delayed in order to afford such opportunity, but counsel have seen fit to disregard any suggestions with respect to that phase of this matter.

### Conclusion of Law

Accordingly, as to the first question, additional compensation will be allowed only to the extent of $8,068.44.

> A requested allowance of additional counsel fees for counsel to the said trustees in sum of $1,000.

### Discussion

An examination of the account indicates that credit has been taken in this account for counsel fees in the sum of $10,000, as to which no exceptions have been filed and the same has been approved by the court's confirmation of the account, hereinbefore noted.

As the court understands the request, it is for services performed on behalf of the accountants, in seek-

ing the allowance of additional compensation to the accountants.

In the opinion of this court no such allowance is proper.

A similar situation existed in Powers' Estate in the Orphans' Court of Philadelphia County, where the auditing judge allowed counsel fees for services of counsel made necessary in establishing the right to commissions.

The court en banc, in an opinion by Judge Hunter, whose opinions are not to be lightly regarded, reversed the auditing judge and held that no fee should be paid to counsel beyond the fee for general services, credit for which is taken in the account: Powers' Estate, 58 D. & C. 379, 386.

In the within-entitled estate, the balance for distribution is very substantial and an item of $1,000 would not seriously deplete the corpus of the trust.

This court is of opinion, however, that the credit taken for counsel fees of $10,000 is adequate and proper and not disproportionate, and that the estate should not be further subjected to counsel fees for counsel representing claimants against the trust fund.

*Conclusion of Law*

Accordingly, the request for additional counsel fees is refused.

The court is asked to fix the compensation
to be allowed to the guardian and trustee
ad litem appointed by the court.

In keeping with the established practice of this court, the court requested the approval or disapproval by all parties in interest of an award to John M. Kurtz, Jr., Esq., guardian ad litem and trustee ad litem, and herewith fixes the amount thereof in the sum of $1,250 to be paid from principal, there being no objection to said amount. . . .