## Lovering Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Robert G. Erskine* of *Raspin, Espenshade, Heins, Erskine & Stewart*, for exceptants.

*William H. S. Wells* of *Saul, Ewing, Remick & Saul*, contra.

*Ralph C. Donohue*, for Commonwealth.

LEFEVER, J., June 8, 1962.—The exceptions raise two questions: ... (2) did the auditing judge err in the amount of compensation he awarded to the trustee?

．　　　．　　　．　　　．　　　．

### 2. *Trustee's Compensation*

" 'The rule as to commissions in all cases is compensation for the responsibility incurred and the service and labor performed' ": Gardner's Estate, 323 Pa. 229, 238, and cases cited. "Compensation, of course, is not a

question of percentage, but of compensation for services rendered. Nevertheless, as in the past, for the guidance of trustees and the courts, a standard of commissions for normal services must be measured by a percentage, to be increased or decreased according to the value of services in a particular estate": Williamson Estate, 70 D. & C. 230, 234. See also Williamson Estate, 368 Pa. 343, 349; Gardner's Estate, supra, 239; Harrison's Estate, 217 Pa. 207; and Montgomery's Appeal, 86 Pa. 230, 234.

Compensation to a personal representative is computed upon the inventory value. "Where compensation is assessed as a percentage of total assets administered, the rule, as we have applied it and as customarily applied in the orphans' courts throughout the State, is to allow commissions on the appraised value of the corpus at the time it reaches the hands of the executor or administrator. This is the value of the assets actually administered. Subsequent accretions should not increase the allowance of compensation, nor losses reduce it, unless exceptional circumstances in fairness require that this be done . . .": Gardner's Estate, supra, 238, 239. This is logical, because it is the duty of an executor and administrator to liquidate the estate, pay the debts, file the account and distribute the assets promptly. A personal representative may be cited to file an account six months after the first advertisement of the grant of letters. In the absence of compelling circumstances, a personal representative has a duty to complete the administration of an estate within a year. See Merkel's Estate, 131 Pa. 584, 612; Curran's Estate, 18 D. & C. 103, 105. Moreover, the personal representative has no duty to invest the assets of the estate, although he may do so in certain circumstances: section 506 of Fiduciaries Act of April 18, 1949, P. L. 512, as amended. It follows that the personal representative's compensation should be calculated upon the value of the estate at the

inception of his duties, namely, the inventory value. Otherwise, the personal representative would be rewarded for ignoring or violating his duty to liquidate the estate promptly.

In contrast, a trustee's duty is to invest, reinvest and manage the assets of the estate, collect the income, and distribute the income and principal as directed by testator or settlor. In view of these widely different, even antithetical duties, the rule of Gardner's Estate, supra, as to time of valuation of assets is not applicable to compensation of trustees. *Per contra*, the reasonable and logical rule is that a trustee should ordinarily be compensated out of principal based upon the value thereof at the date of filing his account.

In Lafferty's Estate, 184 Pa. 502, the trustees were allowed commissions upon the amount realized on sales of securities above their appraised value. In Cray Trust, 4 Fiduc. Rep. 194, the Allegheny County Orphans' Court based the commission on the termination value of $27,440 rather than on $6,860, the stated original value of the trust. And in Risley's Estate, 9 D. & C. 125, where the trust estate had decreased in value from $25,000 to $14,600, Judge Gest of this court stated that "the commissions of a trustee on principal are not due until the termination of the trust, and that period having arrived, I think it proper and right to take into consideration the present value of the assets upon which he is charging commissions and from which his commissions must be deducted." Cf. Smith Estate, 35 D. & C. 383.

The value of the dollar has greatly depreciated during the past 25 years by ever spiralling inflation. However, nothing goes up perpetually. It is fitting that a trustee should be rewarded for an administration which properly enhances the value of the corpus, but not for an administration which reduces the value of the corpus (even though the conduct of the trustee may not be sur-

chargeable). Calculating the trustee's commission upon the market value of the assets at the termination of the trust takes into consideration the fluctuating value of the dollar and the sagacity and success of the trustee's investment policy. It is our opinion, therefore, that trustees' commissions should be so calculated.

The subject of compensation to fiduciaries is a constantly recurring one in the orphans' court. It is a daily problem of corporate fiduciaries and lawyers. It plagues individual fiduciaries and co-fiduciaries. It is a truism that "no two wills are alike". Likewise, no two estates require precisely the same amount of time, attention and effort to administer. However, most estates follow a normal pattern and involve an average amount of work, varying directly with their size.

It is the experience of this court (through which several thousand estates, valued at hundreds of millions of dollars pass each year) that lawyers and trust officers customarily evaluate the compensation for their services on a graduated percentage basis. Graduated schedules are common, every day experience. Lawyers, judges, trust officers and laymen daily deal with the common example—Federal income and estate taxes. They also encounter the minimum fee bill of the Philadelphia Bar Association, which bases fees for lawyers' services to decedents' estates on a reducing graduated scale. See Walker Estate, 26 D. & C. 2d 315; and Magaziner Estate, 9 D. & C. 2d 457. Despite the Supreme Court cases to the contrary, as a practical matter, many judges intuitively use a graduated scale in evaluating the services of a fiduciary.

Such percentage in the ordinary case measures the amount and character of the trust corpus, the risk and responsibility undertaken by the trustee, the character of the service rendered, the difficulties encountered in administration of the trust, and the skill and success of the trustee in administering the trust, the factors

which the Supreme Court requires us to consider in fixing compensation for a fiduciary. It is common experience that normally the amount, character and complexity of the services of the fiduciary vary directly with the size of the estate; although the rate of increase in work diminishes somewhat as the estate becomes quite large. This rule bends where the services performed by the fiduciary are unusual or extraordinary. In such cases, additional compensation is awarded.

Certainty and exactness in the law are of utmost importance. Lord Coke well said "the knowne certaintie of the law is the safetie of all." For example, there is little doubt that the Pennsylvania Rule of Apportionment originating in Earp's Appeal, 28 Pa. 368, was an equitable and fair rule for life tenant and remaindermen. However, the application of the rule in modern society became utterly impractical. The harsher and more rigorous Massachusetts rule was adopted by our legislature in the Uniform Principal and Income Act of May 3, 1945. Recently in Catherwood Estate, 405 Pa. 61, the Supreme Court applied this rule retroactively. The rationale was that the practicality of an exact rule, with the concomitant ease of administration, was preferable to the uncertainty, administrative detail and excessive cost implicit in the application of the more equitable Pennsylvania Rule of Apportionment. Similarly, an exact formula for calculating fiduciaries' compensation would seem preferable to the oft stated doctrine that each case is sui generis.

As well stated by President Judge Klein in an adjudication filed May 18, 1962, in Stoddart Estate, 27 D. & C. 2d 251:

"Generally, a fiduciary, in this State, in the absence of an express contract, is not permitted to charge graduated commissions on principal diminishing in higher brackets: Williamson Estate, 368 Pa. 343 (1951); Gardner's Estate, 323 Pa. 229 (1936). Nor can it make

an annual charge (usually, as in the present case, in the amount of one-half of one per cent of the trust principal) payable in equal shares from principal and income, except by express contract. Our experience, over the years, would lead us to believe that such methods of compensating fiduciaries for their services, if permissible, would be fair and reasonable, and it is hoped that they will be adopted in this State, either by act of the legislature or by appellate court action." However, until and unless such change is made we are bound by established law.

With these principles in mind, we turn to the facts in the instant case.

Testator died on December 10, 1882. For 78 years trustee administered the trust. Trustee did not serve as executor. It has received and disbursed income in the amount of $792,661.58. It has charged compensation of $29,317.10 thereon, which amounts to a rate of only 3.69 percent. The trust corpus has increased in value from $211,000 to $555,000.

The trustee requested a principal commission of $25,000 on the ground that "consideration should be given to the length of the trust and the results obtained." The remaindermen took the position that three percent of the original value of the estate, viz., $6,860, was the proper amount. The learned auditing judge allowed compensation in the amount of $20,000. In its brief, trustee states "with this finding the Trustee is entirely satisfied." Remaindermen have excepted to it.

The terminal value of the trust is $555,000. Seventy-eight years is far longer than the usual, normal duration of a trust. Therefore, the trustee is entitled to compensation for both regular duties, and also for extraordinary, unusual services. Moreover, the charge upon income has been lower than customary. Taking all of these factors into consideration, $20,000 is proper, even modest, compensation.

It is well established that determination of the amount of a fiduciary's compensation rests largely within the discretion of the auditing judge: Williamson Estate, supra, 349. ". . . Fixing the amount of compensation is peculiarly within the discretion of the court below, which in most cases is better able to judge as to the reasonableness of such charges than the appellate court. Unless such discretion is clearly abused, the judgment of the court below will not be disturbed": Strickler Estate, 354 Pa. 276, 277, and cases cited. We find no fault with the learned auditing judge's award of compensation.

Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.